**FRANCIS E. HEYDT COMPANY,**
**Plaintiff–Appellee,**

v.

**UNITED STATES of America, and Richard Cheney, Secretary of Defense, United States Department of Defense, Defendants–Appellants.**

**No. 90–5144.**

United States Court of Appeals,
Tenth Circuit.

Nov. 4, 1991.

Timothy Sullivan, Washington, D.C. (Katherine S. Nucci, Washington, D.C., and Edwin S. Hurst, Tulsa, Okl., on the briefs), for plaintiff-appellee.

Michael E. Robinson, Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst.

Atty. Gen., Tony M. Graham, U.S. Atty., William Kanter, Dept. of Justice, Washington, D.C., and Judith Pullman Gever, Defense Indus. Supply Center, Philadelphia, Pa., on the briefs), for defendants-appellants.

Before LOGAN, MOORE, and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Francis E. Heydt Company, a manufacturer of military apparel, sought declaratory and injunctive relief to prohibit the Secretary of Defense, Richard Cheney, (the Secretary) from withholding payments on uniforms delivered under a contract with the Department of Defense (DOD). Although the district court found the claim for payment of invoices properly resided with the Claims Court, it held the Secretary's failure to afford notice and a hearing before taking the action under the Gratuities Act, 10 U.S.C. § 2207, warranted an award of attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). We disagree and reverse.

## I.

In 1985, Francis E. Heydt Company (the Company) was the low bidder on a contract solicited by the Defense Personnel Support Center (DPSC) of the DOD's Defense Logistics Agency (DLA) to manufacture 56,-800 night camouflage desert trousers (Contract 0527). In September and October 1987, DPSC accepted the last two shipments from the Company even though it had earlier learned that Francis Heydt, the Company's sole owner, had paid a DPSC contracting official a $10,000 gratuity in exchange for obtaining Contract 0527.[1] Based on this information, DPSC notified the Company on September 30, 1987, of its Proposed Debarment or exclusion from conducting business with the government under 48 C.F.R. § 9.405.[2] Subsequently, on November 2, 1987, a DPSC contracting officer recommended terminating Contract 0527 under the Gratuities clause found in the Contract as required by 10 U.S.C. § 2207(1)[3] (the Gratuities Act) and Federal Acquisitions Regulation (FAR) § 52.203–3, 48 C.F.R. § 52.203–3.[4] A week later, the

1. In a broad investigation of procurement irregularities, DPSC discovered "clothing and textile contractors have been paying bribes and/or giving gratuities to Government employees over a number of years in order to obtain access to inside information and other favorable treatment relating to the award and administration of DPSC military uniform contracts." Report and Recommendation for Termination of Contract Under Gratuities Clause. In February 1987, Donald Sherry, Chief of the DPSC Clothing and Textile Branch, was indicted for conspiracy to defraud the United States and bribery. In testimony provided under a plea agreement, Sherry described how, on two separate occasions in the summer of 1985, Francis Heydt gave him $5,000 in cash in exchange for Sherry's cancelling the initial solicitation of the contract when the Company had been the high bidder. Sherry then reopened the bidding. Although the Company was the low bidder on the resolicited contract, Francis Heydt owned the other three companies also submitting bids.

2. Subsection 9.405(a) states:

Contractors debarred, suspended, or proposed for debarment are excluded from receiving contracts, and agencies shall not solicit offers from, award contracts to, or consent to subcontracts with those contractors, unless the acquiring agency's head or designee determines that there is a compelling reason for

such action.... Contractors debarred are also excluded from conducting business with the Government as agents or representatives of other contractors.

3. 10 U.S.C. § 2207(1) provides:

Money appropriated to the Department of Defense may not be spent under a contract other than a contract for personal services unless that contract provides that—

(1) the United States may, by written notice to the contractor, terminate the right of the contractor to proceed under the contract if the Secretary concerned or his designee finds, after notice and hearing, that the contractor, or his agent or other representative, offered or gave any gratuity, such as entertainment or a gift, to an officer, official, or employee of the United States to obtain a contract or favorable treatment in the awarding, amending, or making of determinations concerning the performance, of a contract; ...

4. 48 C.F.R. § 52.203–3 states in part:

**Gratuities**

As prescribed in 3.202, insert the following clause in solicitations and contracts, except those for personal services and those between military departments or defense agencies and foreign governments that do not obligate any funds appropriated to the Department of Defense:

Company sent a demand for payment of the last two invoices totalling approximately $175,000.

On November 18, 1987, the Company filed this lawsuit alleging the Secretary's action in suspending payment under Contract 0527 without first affording notice and a hearing required by § 2207 and FAR § 52.203–3 was arbitrary and capricious and contrary to law; and absent a temporary restraining order, the Company would be irreparably harmed.[5] The Magistrate denied immediate relief but set the motion for preliminary injunction for a hearing.

On March 14, 1988, the Magistrate recommended granting the Company's request for preliminary injunction.[6] Before ruling on the recommendation, however, the district court was informed the Secretary had sent the Company a Gratuities Clause Notice of Hearing, and the United States District Court for the District of Columbia had affirmed the Secretary's action debarring the Company. *John F. Robinson, Trustee for the Francis E. Heydt Co. v. Frank C. Carlucci*, (No. 88–5126), *aff'd, Robinson v. Cheney*, 876 F.2d 152 (D.C.Cir.1989). Consequently, on June 30, 1988, the district ordered the parties to submit responses to these events addressing the status and relevance of the activities and whether the relief recommended remained appropriate.[7]

As represented, the Secretary had sent a notice of Proceedings Pursuant to FAR Clause 52.203–3, Gratuities (APR 1984), in

which the Company was informed of a hearing to determine "whether or not gratuities were offered or given on behalf of the Francis E. Heydt Company." [8] On July 26, 1988, the DLA issued its decision finding that Mr. Heydt gave a gratuity of $10,000 to obtain Contract 0527.

On November 30, 1988, the district court entered its order adopting the Magistrate's Report and Recommendation on the issue of directing the Secretary to provide notice and a hearing to the Company without taking further action on Contract 0527. However, the court rejected the recommendation on payment, finding that claim more properly before the Claims Court. The court postponed transfer of the case, however, until it could rule on the application for attorney fees.

In a subsequent order, the court found the Company was a prevailing party under the EAJA, and the government was not substantially justified in its position. Permitting the Company to amend its application to reflect a cost of living increase affecting the fees, the court awarded $21,546.63 in attorney fees and $3,491.50 in costs.

## II.

We begin by distilling the parties' arguments to appreciate the particular posture of this appeal. Essentially, the Secretary contends because the district court was

---

GRATUITIES (APR 1984)
(a) The right of the Contractor to proceed may be terminated by written notice if, after notice and hearing, the agency head or a designee determines that the Contractor, its agent, or another representative—
(1) Offered or gave a gratuity (e.g., an entertainment or gift) to an officer, official, or employee of the Government; ...

5. The Company alleged, "Absent the requested relief, Plaintiff's ability to perform its ongoing contract obligations will be seriously, and perhaps fatally, threatened because Plaintiff's working capital depends exclusively on its receipt of payment in a timely manner from its customers for goods manufactured and delivered." The two unpaid invoices were attached to the complaint. The Company requested a 10–day temporary restraining order for the Secretary to comply with the requirements of 10 U.S.C. § 2207 and to "immediately lift the sus-

pension of payments...." The Company sought a declaration that the Secretary's action violated the statute and regulations and was arbitrary and capricious. Finally, the Company requested costs under the EAJA, 28 U.S.C. § 2412.

6. Having addressed the four-part showing for a preliminary injunction under *Koerpel v. Heckler*, 797 F.2d 858 (10th Cir.1986), the Magistrate concluded, "[T]he very heart of the dispute is failure to afford due process. May the Government suspend due process in the face of allegations of fraud?"

7. The responses appear in Document 14 in the record.

8. The hearing, scheduled for May 5, 1988, was changed to May 19, 1988, to accommodate the Company.

powerless to grant the relief the Company ultimately sought, the Company cannot be deemed a prevailing party in the district court proceeding under the EAJA. The Secretary's argument relies on the Tucker Act, 28 U.S.C. § 1491, which makes the Claims Court the exclusive forum for monetary claims over $10,000 against government agencies. In contrast, the Company maintains it got what it wanted. The declaratory judgment action catalyzed a successful outcome, forcing the Secretary to follow his own regulations and afford the Company due process. Throughout the action, the Company maintains, the Secretary has searched for a theory to obfuscate the fact of its clear statutory duty. The Company urges the district court properly understood the ruse and afforded equitable relief.

Nevertheless, because the Secretary has challenged the district court's jurisdiction in these proceedings, we must first be assured it was properly exercised.[9] Before the district court, the Company alleged jurisdiction under 28 U.S.C. §§ 1331 (federal question);[10] 1361 (action to compel an officer of the United States to perform his duty); 2201 (Declaratory Judgment Act); 2202 (further relief under Declaratory Judgment Act); and 10 U.S.C. § 2207 (the Gratuities Act). As previously noted, the Company sought nonmonetary relief to compel the Secretary to provide notice and a hearing under the Gratuities Act; and monetary relief to lift the suspension of payments under the Gratuities Act permitting final payment of $175,154.07 still owing on its $999,440.40 contract with the government. Although the Gratuities Act served as the basis of federal question jurisdiction, the Company's right to recover derives from the contract itself.

Thus, the question before us is whether the district court, having transferred the monetary claim to the Claims Court, properly retained jurisdiction over the Company's nonmonetary claims as a predicate to its awarding attorney fees under the EAJA.[11] How we perceive the nature of this action and characterize the relief sought resolve the question.

In *State of New Mexico v. Regan*, 745 F.2d 1318, 1322 (10th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985), we articulated a "prime objective" or "essential purpose" inquiry to decide whether the Claims Court has exclusive jurisdiction over a claim combining monetary and nonmonetary relief. New Mexico sought a declaration that the Secretary of the Treasury had improperly calculated state royalties to be paid by the federal government and a monetary award of past royalties and prejudgment interest due based upon the Mineral Lands Leasing Act. New Mexico's claim exceeded $10,000. Finding the suit's primary objective was to recover money owed by the sovereign, we stated, "[T]he Claims Court's exclusive jurisdiction may not be avoided by framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief when, in reality, the thrust of the suit is one seeking money from the United States." *Id.* (citations omitted).

This analysis was applied in *Hamilton Stores, Inc. v. Hodel*, 925 F.2d 1272 (10th Cir.1991), in which a concessionaire in Yellowstone National Park sued the Secretary of the Interior for failure to obtain certain contractual and statutory rights. Scrutinizing the complaint to determine whether

---

9. Moreover, because the jurisdictional issue is dispositive, it is unnecessary to reach the questions of prevailing party status and whether the government's position was substantially justified.

10. The Company stated the action arose under 10 U.S.C. § 2207 and the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

11. This inquiry is also mandated by the EAJA, 28 U.S.C. § 2412(d)(1)(A), which states in part:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States *in any court having jurisdiction of that action,* unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. (emphasis added).

the action was, in fact, a disguised effort to obtain monetary damages from the United States, we concluded plaintiff principally sought an opportunity to protect its preferential right to provide services in the parks under the Concessions Policy Act of 1965. *Id.* at 1279. The district court's federal question jurisdiction was therefore appropriately exercised. *See also Rogers v. Ink,* 766 F.2d 430 (10th Cir.1985), *cert. denied,* 490 U.S. 1034, 109 S.Ct. 1930, 104 L.Ed.2d 403 (1989).

Certainly, the *Regan* analysis, as applied, implicitly incorporates the principle the Company seems to advance here. Not only do the district courts have concurrent jurisdiction with the Claims Court over claims not exceeding $10,000, 28 U.S.C. § 1491, but also they "may properly assert jurisdiction over claims seeking declaratory relief even when those claims may later form the basis for money judgments." *Com. of Mass. v. Departmental Grant Appeals Bd.,* 815 F.2d 778, 783 (1st Cir.1987) (citing *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 71, n. 15, 98 S.Ct. 2620, 2629, n. 15, 57 L.Ed.2d 595 (1978)). The Company, however, would explicitly supplement the *Regan* analysis to scrutinize the nature of the equitable relief sought to establish § 1331 jurisdiction.

In this case, the Company contends it succeeded in establishing an important due process right.[12] Although the Secretary attempted to moot the procedural issue, "the District Court recognized that the Government's decision to issue notice and hold a hearing under the Gratuities Statute was causally connected to [the] lawsuit...." Without the lawsuit, the Compa-

ny insists, the Secretary would not have afforded due process.[13]

In *Hahn v. United States,* 757 F.2d 581 (3d Cir.1985), plaintiff class participants in the National Health Service Corps Scholarship Program sought a declaration of their entitlement to "constructive service credit" for time devoted to their professional education. The consequence of this ruling would be an award of back pay for class members that could only be adjudicated in the Claims Court. In deciding that the district court had jurisdiction over the nonmonetary claim, the Third Circuit cautioned its decision would not permit artful pleading to create district court jurisdiction for claims exceeding $10,000; or, "to 'split' their causes of action for money damages between the district court and Claims Court." *Id.* at 591. Instead, the Third Circuit specified, "We hold only that '[i]f the declaratory or injunctive relief a claimant seeks has *significant prospective effect* or *considerable value* apart from merely determining monetary liability of the government, ... the district court may assume jurisdiction over the nonmonetary claims.'" *Id.* (quoting *Minnesota by Noot v. Heckler,* 718 F.2d 852, 858 (8th Cir.1983)) (emphasis added). Thus, a determination that the court's order would do more than assert a past position but was "prospectively-oriented," affecting future action or ongoing relationships would serve as a basis to permit splitting a cause of action between the Claims Court and the district court. *See also Com. of Mass. v. Departmental Grant Appeals Bd.,* 815 F.2d at 784.[14] That the relief afforded has the concomitant effect of establishing a mone-

---

**12.** In its brief, the Company states, "[Its] goal was to force the Government to provide due process to the Company and other Government contractors *before* depriving them of their property rights. In this respect, [it] was acting as a private attorney general in litigating against the Government and its victory in District Court furthered the public interest."

**13.** We note the district court made no finding that the lawsuit caused the government to change its behavior. During oral argument, in response to the panel's inquiry, the Company implied a specific finding was not necessary,

citing *Luethje v. Peavine School Dist. of Adair County,* 872 F.2d 352 (10th Cir.1989). However, in *Peavine,* the district court denied attorney fees under 42 U.S.C. § 1988, specifically finding there was no causation between plaintiff's filing suit and the change of policy achieved. This case was not cited in the Company's brief.

**14.** In *Com. of Mass. v. Departmental Grant Appeals Bd.,* 815 F.2d 778 (1st Cir.1987), the State sought a declaration that court-ordered abortions were reimbursable Medicaid expenses. However, the court, applying *Hahn,* found the only objective of the suit was reimbursement for past State expenditures.

tary judgment does not then necessarily oust district court jurisdiction.

If we apply this analysis to glean the nature of declaratory relief sought here, we note the Secretary sent notice of the hearing under the Gratuities Act before the district court's ruling but after the Company initiated suit. After the Company filed suit but before the Magistrate's report and recommendation, the government's debarment action based on the alleged payment of a gratuity was upheld in the district court for the District of Columbia.[15] Notice of the Gratuities Act proceeding was mailed a month after the District of Columbia's final order.[16] Final action under the Gratuities Act was taken on July 26, 1988, four months before the order appealed from here.

■ Consequently, under these circumstances, the equitable relief sought did not have any "significant prospective effect" or "considerable value" *apart* from the claim for monetary relief. *Hahn,* 757 F.2d at 591. Notice and a hearing resulting in action similar to that involved in the debarment proceeding were completed fully four months before the district court transferred the case to the Claims Court but retained jurisdiction under the EAJA. Moreover, the record establishes the Company's litigation was directed toward payment of a claim by enjoining the Secretary from withholding payment.[17]

Under these circumstances, the district court abused its discretion in granting declaratory relief. This conclusion is not only tethered to the Declaratory Judgment Act, which creates no independent jurisdictional ground, *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), but also to settled judicial application.

The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941), quoted in 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2759, pp. 647–48 (1983).

Not only was the district court without jurisdiction to resolve the controversy between the parties, but in this case, its equitable relief was hollow. The DLA had clarified the legal relations and questions at issue already. Whatever procedural victory the Company believed it had achieved, thus, was without any legal foundation.[18] "[A] court must have jurisdiction over an action before it may award fees under the EAJA." *Montes v. Thornburgh,* 919 F.2d 531, 534 (9th Cir.1990).[19]

---

**15.** While the Company states the debarment proceeding is irrelevant to this suit, it acknowledges the notice of debarment and subsequent proceedings were based on the same conduct involved in the Gratuities action.

**16.** The Secretary has explained the same DLA personnel handling the debarment action were also responsible for instituting the Gratuities Act proceedings. In its response to the District Court's June 30, 1988 order, the Company also acknowledged that on October 30, 1987, the Special Assistant for Contracting Integrity recommended terminating Contract 0527 and assessing exemplary damages for violating the Gratuities clause in the contract.

**17.** The Company had argued the proper procedure was for the Secretary, having accepted final shipments, to pay the full contract price and then seek the Gratuities Act remedies, including exemplary damages. There is deposi-

tion testimony supporting the Secretary's assertion the particular contracting division involved had not previously processed an alleged Gratuities Act violation.

**18.** Although we do not reach the question of prevailing party status, our decision also reflects the current jurisprudence under the EAJA. The Supreme Court has stated, "[A] favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render him a 'prevailing party.' Any other result strains both the statutory language and common sense." *Hewitt v. Helms,* 482 U.S. 755, 763, 107 S.Ct. 2672, 2677, 96 L.Ed.2d 654 (1987).

**19.** Furthermore, the Claims Court has jurisdiction to award attorney fees under the EAJA. *Essex Electro Engr's, Inc. v. United States,* 757 F.2d 247, 251 (Fed.Cir.1985).

We conclude the district court erred in bifurcating this case and awarding attorney fees under the EAJA. The judgment is therefore REVERSED.