**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 22 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LEE C. BURKINS,

      Plaintiff - Appellee,

  v.

UNITED STATES OF AMERICA; THE
NATIONAL GUARD BUREAU, Lt.
Gen. John B. Conaway, Director;
UNITED STATES DEPARTMENT OF
THE ARMY, Togo D. West, Secretary;
ARMY BOARD FOR CORRECTION OF
MILITARY RECORDS, David Kinneer,
Executive Secretary,

      Defendants - Appellants,

  and

JOHN L. PATRICK, JR.; DOUGLAS
TOM,

      Defendants.

Nos. 96-1132
and 96-1208

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 93-K-2125)**

---

Mary K. Doyle (Barbara C. Biddle with her on the briefs), Attorneys, Department of
Justice, Washington, D.C., for Appellants.

Eva Camacho Woodard, Law Office of Eva Camacho Woodard, Lakewood, Colorado, for Appellee.

_____

Before **ANDERSON**, **LUCERO**, and **MURPHY**, Circuit Judges.

_____

**ANDERSON**, Circuit Judge.

_____

Appellee Lee C. Burkins sued the United States; the National Guard Bureau, Lieutenant General John B. Conaway, Director; the Department of the Army, Togo D. West, Secretary; and the Army Board for Correction of Military Records (ABCMR), David Kinneer, Executive Secretary (collectively the Defendants) in federal district court seeking a writ of mandamus ordering the ABCMR to correct his military records to reflect that he received a disability discharge,[1] rather than an honorable discharge, from active duty in the Army on November 4, 1970.[2]  Burkins claims that he should have received a disability discharge in 1970 because he suffered from 100% disabling post traumatic stress disorder (PTSD) which he incurred while serving in Vietnam.  The district court concluded that Burkins was entitled to such a disability discharge and

_____

[1]The terms "disability discharge" and "medical discharge" are used by Burkins, and appear in the record, interchangeably.  We use the term "disability discharge" consistently throughout this opinion for the purpose of clarity.

[2]Burkins also brought claims under the Federal Tort Claims Act, Section 1983, the Freedom of Information Act, and the Privacy Act.  However, all of these claims were resolved in the district court and are not at issue in this appeal.

directed the ABCMR to change his records and provide him with computations regarding the disability retired pay[3] he should have received from the Department of the Army from November 1970 to March 1987. The court also awarded Burkins attorney's fees, costs and expenses.

The Defendants assert on appeal that (1) the district court lacked jurisdiction, (2) Burkins did not meet the requirements for the issuance of a writ of mandamus compelling the ABCMR to correct his military records, (3) the district court erred in directing the ABCMR to include interest in the computations of the retired pay, and (4) the district court abused its discretion in awarding attorney's fees and expenses under the Equal Access to Justice Act. We conclude that the district court lacked jurisdiction, and we direct that the action be transferred to the United States Court of Federal Claims. Accordingly, we do not reach the other issues on appeal.

## BACKGROUND

On January 19, 1968, Burkins entered the United States Army on active duty and served in Vietnam as a Green Beret with the 5th Special Forces Group. On November 4, 1970, following his tour of duty, Burkins submitted to a separation physical examination. Following the examination, he was found medically qualified for separation and was

---

[3]"Retired pay" is the term used by the Department of the Army to describe the payments made to a member who retires pursuant to a disability discharge. See 10 U.S.C. § 1201(a).

-3-

honorably separated from active duty and transferred to the Reserve Control Group.

More than a decade later, on February 18, 1982, Burkins enlisted in the Hawaii Army National Guard (Guard) and the next year was promoted to staff sergeant. In June of 1984, during a field training exercise, Burkins became hysterical. He made references to the North Vietnamese Army, shouted in Vietnamese, attempted to tie up a fellow Guard member, and fired blanks in the faces of other Guard members. Later that month, Burkins told his supervisor that he was quitting the Guard because of stress. He was told that he could not quit, but he did so anyway and became absent without leave or permission. Burkins commenced psychiatric counseling on September 19, 1984, and remained in continuous therapy until the end of 1989. After he left the Guard, a unit administrator in his Guard unit transferred him to inactive duty status by forging his name to a transfer request.

After Burkins left the Guard and was fraudulently transferred to inactive duty, the only formal involvement he had with the Guard was to submit to a periodic Guard medical examination on March 18, 1987. During the examination, Burkins told the physician that he was receiving treatment from a psychiatrist for combat-related stress, he had frequent trouble sleeping, he suffered from depression or excessive worry, and he suffered from nervous trouble. Nonetheless, the physician found him medically qualified for duty. Burkins was separated from the Guard in February of 1989 upon the expiration of his term of service.

Sometime after the 1984 training incident, Burkins decided to seek disability benefits for PTSD. He had the option of pursuing benefits through two different agencies and based on different standards. First, he would be entitled to retired pay from the Department of the Army if he was "unfit to perform the duties of [his] office, grade, rank, or rating" because of a physical disability which was at least 30% disabling under the Department of Veterans Affairs disability rating schedule and the disability was "incurred while [he was] entitled to basic pay." 10 U.S.C. § 1201 (Supp. 1997). However, because he was separated from the Army and the Guard without any determination that he was unfit to perform his duties, he first had to apply for a change in his military records to reflect that he was unfit and entitled to a disability discharge. The ABCMR is authorized to correct military records if it finds that such a change is "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). After the ABCMR has corrected a veteran's military records, the Department of the Army may pay the veteran for the loss of retired pay resulting from the correction. 10 U.S.C. § 1552(c). However, the Department of the Army may not pay the veteran any benefit which he is entitled to receive from the Department of Veterans Affairs (V.A.). 10 U.S.C. § 1552(e).

Second, Burkins would be entitled to disability benefits from the V.A. if he had a "disability resulting from . . . disease contracted in line of duty, or for aggravation of a . . . disease contracted in line of duty." 38 U.S.C. §§ 1110 (wartime), 1131 (peacetime). If a veteran is determined to have such a disability, he is assigned a disability rating and

compensation amount based on the degree of impairment in the veteran's ability to earn income from civil occupations. 38 U.S.C. § 1155. In order to receive disability benefits, a veteran must first file a claim with the V.A. 38 U.S.C. § 5101. If the veteran's claim is denied, the veteran may seek review from the Board of Veterans' Appeals, then the Court of Veterans Appeals, and finally the Federal Circuit. 38 U.S.C. §§ 7104, 7252, 7292. However, even if a veteran qualifies for both retired pay from the Department of the Army and disability benefits from the V.A., the veteran cannot receive the full amount of each because 38 U.S.C. § 5304 prohibits duplication of benefits. In such a case, the veteran may elect to waive the portion of retired pay that would be duplicative of disability benefits and, thereby, become entitled to receive the disability benefits in addition to the unwaived portion of retired pay. 38 U.S.C. § 5305.

Burkins sought disability benefits from the V.A. The V.A. initially awarded him a 10% disability rating for PTSD, retroactive to March 11, 1987. However, the rating was later increased to 100% and made permanent, retroactive to March 11, 1987. Burkins requested an earlier effective date, but the Board of Veterans' Appeals denied that request. In August of 1988, Burkins requested copies of his Guard military record and discovered the forged transfer document and thereafter requested an investigation. The Inspectors General of the Guard and National Guard Bureau investigated his transfer to inactive status. The Inspector General of the National Guard Bureau concluded that Burkins' unit commander had improperly transferred him, but that he was not denied any

-6-

entitlements as a result. The Inspector General advised Burkins that if he wished to have his military records changed to remove the fraudulent transfer, he would have to apply to the ABCMR.

In September of 1989, Burkins applied to the ABCMR for a correction of his records to show that (1) his transfer to inactive status with the Guard was fraudulent, and (2) when he was separated from the Army on November 4, 1970, he was unfit to perform the duties of his military office and, thus, was entitled to a disability discharge. He further requested "all benefits be provided as such separation of duty allows." Appellant's App. Vol. II at 12, 19. On July 1, 1992, the ABCMR issued an opinion recommending that Burkins' records be changed to show that: (1) his transfer to inactive status was void; (2) on March 18, 1987, he was medically unfit for duty because of 50% disabling PTSD; (3) on March 18, 1987, he was relieved from active reserve duty due to physical disability; and (4) effective March 19, 1987, he was permanently retired with entitlement to retired pay.[4] Thereafter, the Deputy Assistant Secretary of the Army approved the recommendations.

---

[4]The ABCMR found that Burkins was entitled to a 50% disability rating retroactive to March 18, 1987, even though the V.A. found that Burkins was entitled to a 100% disability rating retroactive to March 11, 1987. The different ratings and different dates are a result of different agencies awarding benefits based on different standards and regulations. The Department of the Army awards retired pay based on a member's inability to continue his or her military career because of a disability, while the V.A. awards disability benefits based on a member's impaired ability to earn income from civil occupations. See discussion supra pp. 4-6.

Following the ABCMR's issuance of its final decision, Burkins filed this action in district court seeking a finding that the decision is arbitrary and capricious and contrary to law and a writ of mandamus ordering the ABCMR to correct his military records to show a disability discharge as of November 4, 1970, or, alternatively, to show a disability discharge as of June of 1984 "when Plaintiff advised his chain of command of his medical problems." Appellant's App. Vol. I at 25-26 (Pl.'s First Am. Compl.). Burkins further alleged that the ABCMR's refusal to correct his records had "caused the Plaintiff either the loss of approximately 17 years of Veterans Administration benefits (approximately $200,000) or the loss of 33 months of Veterans Administration retirement benefits (approximately 58,800.00) plus loss of the use of the benefits." Id. at 17. Burkins maintained that "without actually awarding the Veteran's Administration disability benefits," the district court had "authority to order that Plaintiff's military records be corrected . . . which finding will cause the Veteran's Administration . . . to grant the Plaintiff the retroactive disability benefits sought." Id. at 17-18.

On May 12, 1995, the district court remanded to the ABCMR so it could consider (1) a letter from Command Sergeant Major Franklin Miller, a soldier who served with Burkins in Vietnam, regarding Burkins' state of mind while he was serving in Vietnam, and (2) a memorandum from the Guard regarding Burkins' psychological problems in 1984. On June 28, 1995, the ABCMR found that while Burkins may have had PTSD symptoms when he was separated from the Army in 1970, he was not unfit to perform his

duties and was not entitled to a disability discharge. The ABCMR based its decision on the lack of evidence that Burkins was unfit at that time and on the fact that he appeared fit when he enlisted in the Guard in 1982 and performed his duties and was promoted. Accordingly, the ABCMR denied further relief.

Thereafter, the Magistrate Judge concluded that the ABCMR's decision was not arbitrary and capricious and recommended that Burkins' request that the district court order a further change in military records be denied. On January 25, 1996, the district court concluded that the ABCMR's decision was arbitrary and capricious. The court ordered the ABCMR to correct Burkins' military records to reflect that "[b]ased upon the ABCMR record, retroactive to November 4, 1970, Lee C. Burkins should have been granted a disability discharge because he suffered from the condition of Post Traumatic Stress Disorder and the condition was 100% disabling." Burkins v. United States, 914 F. Supp. 408, 415 (D. Colo. 1996). The court further ordered the ABCMR to provide Burkins with "computations showing the present value of the disability retirement pay plus cost of living increases, plus statutory interest, compounded quarterly, that should have been paid to . . . Burkins for the period of time from November 4, 1970 to March 18, 1987 had he properly received a 'disability' discharge at the 100% level." Id. At oral argument before the district court, Burkins' counsel stated that "we wanted those computations . . . so Mr. Burkins could compare the amount that he would have received

under military retirement versus what he can receive at the VA." Appellant's App. Vol. I at 395-96.

The ABCMR complied with the court's order by making the changes to Burkins' military records and providing him with computations from the United States General Accounting Office indicating that the present value of the retired pay, computed as directed by the court, is $146,820.08. Id. at 387.

## DISCUSSION

The Tucker Act, 28 U.S.C. §§ 1346, 1491, "vests exclusive jurisdiction" with the Court of Federal Claims for claims against the United States founded upon the Constitution, Acts of Congress, executive regulations, or contracts and seeking amounts greater than $10,000. New Mexico v. Regan, 745 F.2d 1318, 1322 (10th Cir. 1984); see also Southeast Kansas Community Action Program Inc. v. Secretary of Agric., 967 F.2d 1452, 1455 (10th Cir. 1992); Hamilton Stores, Inc. v. Hodel, 925 F.2d 1272, 1277 (10th Cir. 1991). Tenth Circuit law is clear that the Court of Federal Claims' exclusive jurisdiction may not be avoided by "framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief when, in reality, the thrust of the suit is one seeking money from the United States." Regan, 745 F.2d at 1322; see also Colorado Dept. of Highways v. United States Dept. of Transp., 840 F.2d 753, 755 (10th Cir. 1988); Rogers v. Ink, 766 F.2d 430, 434 (10th Cir. 1985). We have adopted the test

that even if a complaint does not explicitly seek monetary relief, if the plaintiff's "prime objective" or "essential purpose" is to recover money (in an amount in excess of $10,000) from the federal government, then the Court of Federal Claims' exclusive jurisdiction is triggered. Southeast Kansas, 967 F.2d at 1455; Hamilton Stores, 925 F.2d at 1278; Regan, 745 F.2d at 1322. A plaintiff's prime objective or essential purpose is monetary unless the non-monetary relief sought has "'significant prospective effect' or 'considerable value' apart from the claim for monetary relief." Francis E. Heydt Co. v. United States, 948 F.2d 672, 677 (10th Cir. 1991) (quoting Hahn v. United States, 757 F.2d 581, 591 (3d Cir. 1985)).

In this case, Burkins did not explicitly seek monetary relief, but rather sought, and was granted, an order from the district court requiring the ABCMR to change his records to reflect that he received a disability discharge in 1970 and to provide him an accounting of the retired pay he would have been entitled to had he received such a disability discharge. Even though Burkins did not seek monetary relief, it is clear that his prime objective was to obtain benefits exceeding $10,000 in the form of retired pay from the Department of the Army, V.A. disability benefits, or a combination of both. Burkins only brought this action after he was denied V.A. disability benefits retroactive to 1970 and after the ABCMR refused to change his records to reflect a disability discharge in 1970, a change which would entitle Burkins to retired pay retroactive to 1970 and would allow him to seek V.A. disability benefits retroactive to 1970. Burkins' Amended Complaint

-11-

and the record below are replete with references to Burkins' goal of obtaining the retroactive benefits.

In addition, Burkins has failed to articulate how the relief he sought and obtained has any significant prospective effect or considerable value apart from entitling him to the retroactive benefits. First, Burkins is no longer in the military and, thus, his records have no effect on an ongoing relationship with the military. Furthermore, the V.A. has awarded him a 100% disability rating retroactive to March 11, 1987, which entitles him to future V.A. disability benefits. Likewise, the ABCMR has changed his records to reflect a disability discharge retroactive to March 19, 1987. The only further relief Burkins seeks is the payment of retroactive benefits from November 5, 1970, through March of 1987. Thus, this case is unlike those cases in which we determined that the plaintiff's primary objective was to have the court declare the nature of the prospective relationship between the plaintiff and the government agency involved. See Southeast Kansas, 967 F.2d at 1456; Hamilton Stores, 925 F.2d at 1279.

When pressed at oral argument to articulate how a change in his military records would afford Burkins a non-monetary benefit, Burkins' counsel explained that Burkins seeks to correct the fraud perpetrated on him when the Guard administrator forged his name in order to transfer him to inactive status. The problem with this argument is that the ABCMR has already ruled that the fraudulent transfer is "void and of no force or effect." Appellant's App. Vol. II at 9. The only further relief that Burkins seeks is a

finding that, but for the fraudulent transfer, he would have received a mental health

examination in 1984 which would have produced an adequate record to show that he was

unfit for duty in 1970. Such a finding has no value except to entitle him to retroactive

benefits. See, e.g., Francis E. Heydt Co., 948 F.2d at 676-77 (holding that because the

equitable relief sought had already been obtained, such an order did not have any

significant prospective effect or considerable value apart from a claim for monetary

relief).[5]

Because Burkins seeks a writ of mandamus ordering a change in his military

records for the primary purpose of obtaining benefits from the federal government in

---

[5]Burkins cites Smith v. Marsh, 787 F.2d 510 (10th Cir. 1986), in support of his argument that the district court has jurisdiction over his claim. Smith involved a veteran who filed suit in district court seeking to have his undesirable discharge upgraded to honorable. The district court concluded that the ABCMR's refusal to change Smith's records was arbitrary and capricious and the district court ordered the Army to issue Smith an honorable discharge. Id. at 511. The Army appealed the order, arguing that Smith's claims were time-barred and that the ABCMR's decision should be upheld. We affirmed. Id. at 512. The Smith opinion, however, does not aid Burkins. First, Smith does not include any discussion of Tucker Act jurisdiction. Second, even if the jurisdiction issue had been raised, Smith had a significant non-monetary interest in having his discharge status changed from undesirable to honorable in order to remove the ongoing stigma of a substandard discharge status. See, e.g., Kidwell v. Department of the Army, 56 F.3d 279, 285 (D.C. Cir. 1995) (complaint seeking change in discharge status from general to disability-related did not trigger Court of Federal Claims' exclusive Tucker Act jurisdiction because this change "would lift some of the shame associated with failing to receive an honorable discharge"); Wolfe v. Marsh, 846 F.2d 782, 785 n.3 (D.C. Cir. 1988) (complaint seeking reinstatement or upgrade from bad conduct discharge included a non-monetary benefit which "may far exceed his interest in a back pay award"). Burkins does not have a similar interest in having his discharge status changed from honorable to disability-related.

excess of $10,000, the Court of Federal Claims has exclusive Tucker Act jurisdiction and Burkins must pursue his claim in that court. If the Court of Federal Claims rules in Burkins' favor on the merits of his claim, the court can provide him complete relief. The Tucker Act specifically provides that in order "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing . . . placement in appropriate . . . retirement status, and correction of applicable records . . . ." 28 U.S.C. § 1491(a)(2). Thus, if the court finds that Burkins was entitled to a disability discharge in 1970, the court may order the Department of the Army to pay him retroactive retired pay and, collateral to such a judgment, order the correction of Burkins' military records. Thereafter, Burkins could pursue disability benefits from the V.A., and if he received such benefits, could elect to waive a portion of his retired pay in order to receive disability benefits.[6]

---

[6]Because the Court of Federal Claims can provide Burkins complete relief, this case is distinguishable from Bowen v. Massachusetts, 487 U.S. 879 (1988). In Bowen, the Supreme Court concluded that the district court had jurisdiction under the Administrative Procedure Act to review a decision by the Department of Health and Human Services to disallow certain reimbursements to Massachusetts under the Medicaid program. Id. at 912. In a complicated analysis based in part on the specific nature of the grant-in-aid program at issue, the Supreme Court decided that the Court of Federal Claims did not have exclusive jurisdiction over Massachusetts' claim. The Court noted that the Court of Federal Claims cannot provide an adequate remedy for "[m]anaging the relationships between States and the Federal Government that occur over time and that involve constantly shifting balance sheets." Id. at 904 n.39. The Court stated that while the Court of Federal Claims now has "certain equitable powers in special kinds of

(continued...)

-14-

Accordingly, we vacate the following: (1) the district court's January 25, 1996, order[7] to the extent it relates to Burkins' military correction claim, orders the ABCMR to change Burkins' military records, and orders the ABCMR to provide Burkins with retired pay computations; (2) the district court's April 12, 1996, order; (3) the district court's January 29, 1996, judgment to the extent it orders the ABCMR to change Burkins' military records and present Burkins with retired pay computations; and (4) the district court's April 16, 1996, judgment. Furthermore, we remand to the district court with directions that the court sever Burkins' military records correction claim from his other claims pursuant to Fed. R. Civ. P. 21, see F.D.I.C. v. McGlamery, 74 F.3d 218, 222 (10th Cir. 1996); Chrysler Credit Corp v. Country Chrysler, Inc., 928 F.2d 1509, 1518-19 (10th Cir. 1991), and transfer[8] the action involving Burkins' military records correction claim to

---

[6](...continued)
litigation," id. at 905 n.40, the court "does not have the general equitable powers of a district court to grant prospective relief." Id. at 905. As noted above, however, Burkins' claim is precisely the "special kind of litigation" for which Congress has given the Court of Federal Claims specific equitable powers to afford complete relief. Cf. id. at 930 (Scalia, J. dissenting) (stating that the Court's decision in Bowen is limited to the "single type of suit" at issue in that case).

[7]The memorandum opinion and order is reported at 914 F. Supp. 408.

[8]In his amended complaint, Burkins requested that if the "Court determine[s] that jurisdiction for any claims set forth below lies with the Court of Claims, . . . that those claims and particularly Plaintiff's mandamus claim to compel correction of military records be found to have been timely filed and that this Court transfer this claim under 28 U.S.C. § 1631 or 28 U.S.C. § 1406 to the Court of Claims." Appellant's App. Vol. I at 7-8. Burkins made the same request in his memorandum in opposition to the Defendants' motion to dismiss or for summary judgment. Appellant's App. Vol. I at 68-69.

the United States Court of Federal Claims "in the interest of justice." See 28 U.S.C. § 1631 (empowering federal courts to transfer an action to cure want of jurisdiction); see also Rogers, 766 F.2d at 436 (remanding with directions that the district court transfer action to former United States Claims Court which had exclusive Tucker Act jurisdiction); Tafoya v. United States Dept. of Justice, 748 F.2d 1389, 1393 (10th Cir. 1984) (transferring petition to former United States Claims Court); Regan, 745 F.2d at 1323 (transferring action to former United States Claims Court which had exclusive Tucker Act jurisdiction).