**WILDWOOD CHILD AND ADULT CARE FOOD PROGRAM, INC., Plaintiff,**

**v.**

**COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, Child and Adult Care Food Program Division; Patricia M. Daniluk, CDPHE–CACFP Division Director, in her official capacity; and the United States Department of Agriculture, Food and Nutrition Service, Defendants.**

**No. Civ.A. 00–B–1901.**

United States District Court, D. Colorado.

Nov. 2, 2000.

---

Sheila H. Meer, Cage & North, P.C., Denver, CO, Diana R. Maurer, Denver, CO, for Plaintiff.

Hollyce Anne Hamilton Farrell, Attorney General's Office, General Legal Services Section, Denver, CO, William V. Allen, Attorney General's Office, Tort Litigation Section, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiff Wildwood Child and Adult Care Food Program, ("Wildwood") brings claims for violation of its right to come into compliance, violation of its right to effective stay on appeal, violation of due process, and breach of contract regarding termination of its contract under the National School Lunch Act Program. It requests injunctive and declaratory relief. Defendant United States Department of Agriculture Food and Nutrition Service ("FNS") moves to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). The motion is adequately briefed and oral argument would not aid its resolution. For the reasons set forth below, I deny the Department of Agriculture's motion to dismiss.

### I. Facts

The following is taken from Wildwood's First Amended Complaint. Wildwood is a Colorado "sponsor" in the child day care portion of the National School Lunch Act Program (the "Program"). It has been a participant in the Program since 1978. It employs 25 people and has an annual operating budget of $9,900,000. Wildwood provides meals to approximately 2,300 Program "providers," who in turn serve the meals to children in eligible day care homes and centers. The Program is administered and funded by the United States Department of Agriculture Food and Nutrition Service. FNS contracts with the Colorado Department of Public Health and Environment Child and Adult Care Food Program Division ("CDPHE–CACFP") to administer the Program in Colorado. CDPHE–CACFP in turn contracts with sponsors like Wildwood.

Wildwood had a contract with CDPHE–CACFP prior to October 1999. That contract was automatically renewed, and the renewed contract covered the period between October 1, 1999 and September 30, 2000. Wildwood believed it was entitled to a similar renewal for October 2000 through September 2001. CDPHE–CACFP reviewed Wildwood in May 2000, and on June 13, 2000 issued a written Demand for Corrective Action concerning eleven deficient areas of performance and recordkeeping. On June 28, 2000 Wildwood filed a written Corrective Action Plan, promising compliance within sixty days. The plan was approved, but CDPHE–CACFP required compliance in thirty days rather than sixty, and demanded 100% compliance in specific areas. Although Wildwood protested these changes, CDPHE–CACFP did not respond until September 14, 2000 when it terminated Wildwood's participation in the Program effective September 30, 2000. CDPHE–CACFP then distributed Wildwood's 2,300 providers among the remaining Program sponsors. Although CDPHE–CACFP concurs with Wildwood that there is a right to appeal the termination, CDPHE–CACFP asserts that it has no duty to pay Wildwood's administrative costs or reimburse it for meals during the appeals period. Wildwood alleges that the termination and the manner in which it was conducted was improper under current regulations, and

that Wildwood is entitled to be paid for services rendered during the appeal. Following a hearing on September 27, 2000, I issued a Temporary Restraining Order against the state defendants, requiring that they not reassign Wildwood's providers to other sponsors, and continue to reimburse Wildwood for administrative expenses and the cost of meals supplied to its providers pending completion of the administrative appeal. That Order was converted into a Fed.R.Civ.P. 65 Preliminary Injunction on October 6, 2000.

## II. Motion to Dismiss

Three of Wildwood's six claims for relief apply to FNS: the first claim, right to come into compliance pursuant to 7 C.F.R. § 226.6(c); the second claim, right to effective stay on appeal pursuant to 7 C.F.R. § 226.6(k)(9); and the sixth claim, declaratory judgment pursuant to 28 U.S.C. § 2201. FNS moves to dismiss all three claims.

### A. Standards for Dismissal

#### 1. Rule 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir.1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir.1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir.1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir.1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir.1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *Id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. *Id.* Here, FNS attacks the sufficiency of the First Amended Complaint. Therefore all properly pleaded allegations will be taken as true.

#### 2. Rule 12(b)(6)

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id.* In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir.1999).

Fed.R.Civ.P. 12(b)(6) does not provide a procedure for resolving a contest about the facts or the merits of the case. Thus, one must read Fed.R.Civ.P. 12(b)(6) in conjunction with Fed.R.Civ.P 8(a), which sets forth the requirements for pleading a claim in federal court. Fed. R.Civ.P 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it must "give the defendant fair notice of

what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A plaintiff is not required to state precisely each element of the claim. *See* 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154–59 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988).

### B. Applicability of 42 U.S.C. § 1983

FNS first argues that Wildwood's claims under 42 U.S.C. § 1983 cannot be brought against the federal government. Wildwood has amended its complaint to delete any 42 U.S.C. § 1983 claims against FNS. Therefore, it is unnecessary to examine this contention further.

### C. Waiver of Sovereign Immunity

FNS next argues that no claims may be brought against the federal government absent a waiver of sovereign immunity, which has not occurred in this case. I disagree.

FNS is a division of the United States government. The United States may not be sued without its consent. *See Fostvedt v. United States*, 978 F.2d 1201, 1202 (10th Cir.1992). A waiver of sovereign immunity must be strictly construed in favor of the sovereign and may not be extended beyond the explicit language of the statute. *See id.; United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–35, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). The waiver cannot be implied. *See Fostvedt*, 978 F.2d at 1203. Consequently, a plaintiff must show an express waiver of sovereign immunity authorizing an action against the government. *See Lonsdale v. United States*, 919 F.2d 1440, 1444 (10th Cir.1990). If waiver does not exist, the district court must dismiss the action for lack of subject matter jurisdiction. *See Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir.1989).

Sovereign immunity applies if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or compel it to act." *Crowther v. Seaborg*, 312 F.Supp. 1205, 1219 (D.Colo.1970) (citing *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963)). An exception to the federal government's immunity exists when the plaintiff seeks declaratory and/or injunctive relief against federal entities. *See Kelley v. United States*, 69 F.3d 1503, 1507 (10th Cir.1995); *Dugan*, 372 U.S. at 621–22, 83 S.Ct. 999; *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Applying this rule, the United States Supreme Court has held that sovereign immunity does not apply: (1) when an officer of the United States is not acting in his official capacity; (2) when an officer is acting in his official capacity but is acting outside his statutory authority; and (3) when an officer is acting in his official capacity but is acting in a manner which is unconstitutional. *See Dugan*, 372 U.S. at 621–22, 83 S.Ct. 999; *Larson*, 337 U.S. at 689, 69 S.Ct. 1457 (1949); *see also Painter v. Shalala*, 97 F.3d 1351, 1358 (10th Cir. 1996) ("the ultra vires doctrine allows a plaintiff to overcome the doctrine of federal sovereign immunity where it is alleged a federal officer has acted outside of his or her authority."); *Cabeza De Vaca Land & Cattle Co., L.L.C. v. Babbitt*, 58 F.Supp.2d 1226 (D.Colo.1999).

"[T]he doctrine does not apply in such cases because 'the conduct against which specific relief is sought is beyond the officer's power and is, therefore, not the conduct of the sovereign.'" *Kelley*, 69 F.3d at 1507 (citing *Larson*, 337 U.S. at 690, 69 S.Ct. 1457). "Any other rule would mean that a claim of sovereign immunity would protect a sovereign in the exercise of pow-

er it does not possess." *Id.* (citing *Tenneco Oil Co. v. Sac and Fox Tribe of Indians of Oklahoma,* 725 F.2d 572, 574 (10th Cir. 1984)). Similarly,

> Where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which *the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden.* His actions are *ultra vires* his authority and therefore may be made the object of specific relief.

*Larson,* 337 U.S. at 689, 69 S.Ct. 1457 (emphasis added).

■ Wildwood's first claim for relief alleges that FNS, among others, "failed and refused to apply federal law" when it gave Wildwood only thirty days to correct its deficiencies and demanded 100% correction of some deficiencies. Wildwood asserts that these actions were a violation of 7 C.F.R. § 226.6(c). Thus, Wildwood alleges that the federal agency went beyond its statutory mandate in its interpretation of the law, falling under the exception to the sovereign immunity doctrine.

Wildwood's second claim for relief alleges that FNS, among others, "failed and refused to apply applicable federal law" when it attempted to block the reimbursement of Wildwood's expenses during its appeal of the contract termination. First Amended Complaint at ¶ 29. It alleges these actions were a violation of 42 U.S.C. § 1766(e)(3) and 7 C.F.R. § 226.6(k). Again, Wildwood has alleged sufficiently that a federal agency went beyond its statutory mandate, falling under the exception to the sovereign immunity doctrine.

Finally, Wildwood's sixth claim for relief seeks a declaratory judgment against FNS and all other defendants holding that defendants' interpretation of 7 C.F.R. §§ 226.6(c) & (k)(9) is wrongful, illegal and void. Such relief falls squarely within the exception to sovereign immunity, as it requests non-monetary relief requiring the

federal agency to stay within its statutory bounds.

FNS argues that these three claims are insufficient to fall within the exception to sovereign immunity because Wildwood has failed to assert "that a federal official acted beyond his or her authority or even any specific action by federal officials." I disagree. Wildwood pleads upon information and belief that FNS helped evaluate Wildwood's performance, *see* First Amended Complaint at ¶ 13(a); agreed with the state defendants to terminate Wildwood after the program review, *see id.* at ¶ 14; ultimately approved Wildwood's termination, *see id.* at ¶ 13(b); and, most importantly, concurred with the state defendants' interpretation of 7 C.F.R. §§ 226.6(c) & (k)(9), *see id.* at ¶ 13(b). These allegations are incorporated into the applicable claims for relief. Thus, sufficient allegations of federal agency action have been made to withstand the doctrine of sovereign immunity and the motion to dismiss.

### D. Jurisdiction

FNS next argues that Wildwood has failed to allege jurisdiction adequately. I again disagree.

■ "A party suing the United States, its agencies or officers, must allege both a basis for the court's jurisdiction ... and a specific statute containing a waiver of the government's immunity from suit." *Thomas v. Pierce,* 662 F.Supp. 519, 523 (D.Kan.1987) (citations omitted). In its First Amended Complaint, Wildwood alleges jurisdiction over FNS pursuant to 28 U.S.C. § 1346(a)(2). That statute states,

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: ... [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated

or unliquidated damages in cases not sounding in tort.

The Tenth Circuit has interpreted this provision, when read with 28 U.S.C. § 1491, to impart exclusive jurisdiction on the Claims Court whenever a plaintiff seeks greater than $10,000 or its equivalent. *See Burkins v. United States,* 112 F.3d 444, 449 (10th Cir.1997):

> The Tucker Act, 28 U.S.C. §§ 1346, 1491, "vests exclusive jurisdiction" with the Court of Federal Claims for claims against the United States founded upon the Constitution, Acts of Congress, executive regulations, or contracts and seeking amounts greater than $10,000. Tenth Circuit law is clear that the Court of Federal Claims' exclusive jurisdiction may not be avoided by "framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief when, in reality, the thrust of the suit is one seeking money from the United States." We have adopted the test that even if a complaint does not explicitly seek monetary relief, if the plaintiff's "prime objective" or "essential purpose" is to recover money (in an amount in excess of $10,000) from the federal government, then the Court of Federal Claims' exclusive jurisdiction is triggered. A plaintiff's prime objective or essential purpose is monetary unless the non-monetary relief sought has " 'significant prospective effect' or 'considerable value' apart from the claim for monetary relief."

*Id.* (citations omitted).

As to FNS, Wildwood seeks a declaratory judgment that would allow longer than thirty days for curing any deficiencies, and would afford Wildwood an effective stay which would allow it to operate during its administrative appeal, "including the right to receive continuous payments for administrative costs and meal claims of its providers." First Amended Complaint at p. 17 ¶ 3. FNS argues that because this request would require the payment of money in excess of $10,000, the Court of Federal Claims has exclusive jurisdiction. I am not persuaded.

FNS is correct that Wildwood seeks some monetary relief in the form of payment of operating expenses during appeal. This amount would presumably be greater than $10,000. Regardless, jurisdiction is proper in the District Court. Unlike *Burkins,* Wildwood is not asking for any additional disbursements from the federal treasury. FNS will pay the same amount to the State of Colorado for the year based on the number of eligible children fed. It makes no difference to FNS whether this money goes to Wildwood or one of the other six providers who would take up the slack if Wildwood were put out of business. Indeed, the government may save money if Wildwood's allegations are true that they spend less per meal than do other sponsors. Additionally, the declaratory relief sought has 'significant prospective effect' and 'considerable value' apart from any monetary relief. Wildwood is seeking the ability to remain in business. Thus, Wildwood is essentially asking the court to "declare the nature of the prospective relationship between the plaintiff and the government agency involved." *Burkins,* 112 F.3d at 450. In such a case, jurisdiction may remain with the District Court. *See id.; See also Southeast Kansas Community Action Program Inc. v. Secretary of Agriculture of U.S.,* 967 F.2d 1452 (10th Cir.1992) (district court jurisdiction over federal defendant proper under The Tucker Act where plaintiff sought declaratory and injunctive relief, including invalidation of the federal regulations, a hearing on the non-renewal, and an order requiring funding of the program until that hearing); *Hamilton Stores, Inc. v. Hodel,* 925 F.2d 1272, 1279 (10th Cir.1991) (jurisdiction over federal defendant proper under both § 1346 and § 1331 where plaintiff sought to require National Park Service to offer plaintiff the opportunity to provide the new and additional accommodations in accordance with plaintiff's preferential con-

tractual right, but did not request payment of compensatory damages).

Because jurisdiction over FNS is proper under § 1346(a)(2), it is unnecessary to consider Wildwood's arguments under 28 U.S.C. § 1331.

### E. Standing

■ FNS next argues that Wildwood has no standing to bring claims against the federal government. I disagree.

"Standing [under Article III] is, of course, a threshold issue in every case before a federal court, and diversity claims are no exception." *Hutchinson v. Pfeil*, 211 F.3d 515, 523 (10th Cir.2000). Article III, § 2 of the Constitution states that federal courts have jurisdiction over only live cases and controversies. This is a "bedrock requirement." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). "One element of the case-or-controversy requirement is that [plaintiffs] ... must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). Standing to sue is an essential and unchanging part of the case-or-controversy requirement of Article III. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

[T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized ... and (b) "actual or imminent, not 'conjectural' or 'hypothetical'" .... Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court." ... Third it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130 (citations, footnote, and brackets omitted); *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Plaintiffs bear the burden of proving standing just like any other issue on which they bear the burden of proof.

The party invoking federal jurisdiction bears the burden of establishing these elements.... Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.... At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presume that the general allegations embrace those specific facts that are necessary to support the claim," .... In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial," ...

*Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (citations and brackets omitted).

FNS argues that the alleged causation is merely speculative. As discussed *supra*, Wildwood has alleged that FNS helped evaluate Wildwood's performance, agreed with the state defendants to terminate Wildwood after the program review, ultimately approved Wildwood's termination, and concurred with the state defendant's interpretation of 7 C.F.R. §§ 226.6(c) & (k)(9). Wildwood asserts that, were the preliminary injunction not in place, it would lose payments from the State of

Colorado. As a result, Wildwood would be put out of business permanently. There are sufficient allegations of injury "fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130. *See also Umbehr v. McClure*, 44 F.3d 876, 879 (10th Cir. 1995) (termination of contract conferred standing). Although the loss alleged may be equally traceable to the state defendants, at this stage of the proceedings, general factual allegations of injury resulting from FNS's conduct will suffice. *See Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

FNS also argues that because FNS did not act to cause Wildwood's injuries, there is no redressability. Because Wildwood sufficiently alleged that FNS acted improperly and thus caused it injury, the requested declaratory relief against FNS would redress its injury.

Accordingly, IT IS ORDERED that Defendant's motion to dismiss is DENIED.