FILED
United States Court of Appeals
Tenth Circuit

February 9, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

NORMANDY APARTMENTS, LTD.,

Plaintiff-Appellant,

v.

U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT,
KIMBERLY K. WAITS, in her
capacity as Supervisory Project
Manager of the Multifamily Program
Center in the Tulsa Field Office for
the U.S. Department of Housing and
Urban Development, and HERMAN S.
RANSOM, in his capacity as Director
of the Kansas City Multifamily Hub
for the U.S. Department of Housing
and Urban Development,

Defendants-Appellees.

No. 08-6004

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. CIV-07-1161-R)**

---

Clyde A. Muchmore, Crowe & Dunlevy, Oklahoma City, Oklahoma (Mark S.
Grossman and Nkem A. Housworth, Crowe & Dunlevy, Oklahoma City,
Oklahoma, with him on the briefs) for Plaintiff-Appellant.

R.D. Evans, Jr., Assistant United States Attorney for the Western District of
Oklahoma (John C. Richter, United States Attorney, Oklahoma City, Oklahoma,
with him on the briefs) for Defendant-Appellee.

Before **KELLY**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

_____

**McCONNELL**, Circuit Judge.

_____

In 2007, the United States Department of Housing and Urban Development ("HUD") terminated its contractual relationship with Normandy Apartments. Pursuant to this contract, Normandy had received financial subsidies for making housing available to low-income tenants who were qualified to receive assistance under the Section 8 federal housing program. Normandy sought injunctive and declaratory relief against HUD in the United States District Court for the Western District of Oklahoma, seeking to prevent HUD from abating its subsidy payments. It alleged that HUD had violated its regulations and breached its contractual obligations by the manner in which it terminated its payments to Normandy. The district court construed Normandy's claim as one for specific performance of a contract, and concluded that only the Court of Federal Claims had jurisdiction. Because we conclude, however, that the district court should have exercised jurisdiction over Normandy's claim that HUD violated its own regulations by terminating the Section 8 payments, we reverse and remand for consideration on the merits.

## I. Background

Normandy Apartments has contracted with HUD since 1968 to provide Section 8 rental housing for qualified low-income tenants at its Tulsa apartment

project. Under Section 8's project-based assistance program, tenants pay a portion of their rent, according to their means, but the bulk of the rent is paid by HUD. The district court determined that the value of the funds paid out by HUD to Normandy amounted to roughly $110,000 per month. *Normandy Apartments, Ltd. v. United States Dep't of Hous. and Urban Dev.*, No. CIV-07-1161-R, 2007 WL 3232610, at *2 (W.D. Okla. Nov. 1, 2007).

Under HUD regulations and Normandy's contract with HUD, Normandy was required to maintain the units it makes available for Section 8 tenants in "decent, safe, and sanitary" condition. 24 C.F.R. § 886.323; Aplt. App. 394 § 6(b). About once a year, HUD's Real Estate Assessment Center ("REAC") conducted a physical inspection of the property to ensure compliance with HUD standards, and issued a numerical score on a 100-point scale. A facility fails to meet HUD standards when it receives a score below sixty.

In November 2004, REAC inspected Normandy's complex and issued a failing score of fifty-nine. Although the parties contest Normandy's efforts to correct deficiencies at the complex following this initial inspection, it is undisputed that Normandy failed an August 2006 inspection, receiving an even lower score of fifty-four. This was the sixth time in eight inspections that Normandy's complex received a failing score.

In June 2007, HUD informed Normandy that it was in default of its obligation to maintain the complex in "decent, safe, and sanitary condition" and

indicated that all Section 8 subsidy payments would be terminated. *See* Aplt. App. 236–39. Normandy sought reconsideration of this determination to no avail. After receiving notice on September 28, 2007 that all subsidy payments would be "suspended and abated" effective November 1, 2007, Normandy filed the instant suit, seeking injunctive and declaratory relief in the United States District Court for the Western District of Oklahoma. In particular, it sought a preliminary and permanent injunction preventing HUD from following through on its decision to terminate assistance payments.

Normandy asserted that, in terminating their relationship, HUD had violated both its regulations and the terms of its contract. Count I of Normandy's complaint alleged that HUD had "violat[ed] [its] regulations" by, among other things, "fail[ing] to consider Normandy's request for an adjustment of its REAC physical condition score" and failing to give Normandy a "reasonable amount of time in which to cure the default." Complaint ¶¶ 48–49 (citing 24 C.F.R. § 200.857(c)(3) and 24 C.F.R. § 886.320). Count II averred that HUD had breached its contract for similar reasons (e.g., by failing to allow it to implement corrective actions within a reasonable time following its default (Complaint ¶ 55)).

The district court heard oral argument both on the question of whether it had jurisdiction to issue a preliminary injunction against HUD and on the merits of Normandy's claims. The court first concluded that it was without subject-matter jurisdiction to issue a preliminary injunction. Construing Normandy's

-4-

claim as an action against the government seeking specific performance of a monetary contract, the value of which exceeded $10,000, the court determined that the Tucker Act, 28 U.S.C. § 1491, endowed the United States Court of Federal Claims with exclusive jurisdiction to entertain Normandy's claims. *Normandy Apartments, Ltd.,* 2007 WL 3232610, at *3. It therefore concluded that the United States had not waived its sovereign immunity to suit in federal district court. *See id.* at 2. Because the district court recognized the jurisdictional issues to be "complex," however, it also proceeded to address the merits of a preliminary injunction. *Id.* at 3. Although it found that Normandy had not made a sufficient showing of irreparable injury in order to justify a preliminary injunction, it noted that "[t]he evidence was likely sufficient to establish the other elements" necessary, *id.* at *4, including a substantial likelihood of success on the merits. *Id.* at *3.

Normandy subsequently filed a motion to set aside the district court's dismissal of its motion for preliminary injunction. This too was denied on December 5, 2007. This appeal followed.[1]

## II. Discussion

---

[1]The fact that it is too late for Normandy to secure a preliminary injunction at this point does not moot this appeal. Normandy also sought permanent injunctive relief before the district court. At oral argument, counsel indicated that if we decide that the district court should take jurisdiction over its complaint, Normandy will resume its pursuit of permanent injunctive relief on the merits.

Sovereign immunity generally shields the United States, its agencies, and its officers acting in their official capacity from suit. *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002). The defense of sovereign immunity is jurisdictional in nature, depriving courts of subject-matter jurisdiction where applicable. *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006). Because general jurisdictional statutes, such as 28 U.S.C. § 1331, do not waive the Government's sovereign immunity, a party seeking to assert a claim against the government under such a statute must also point to a specific waiver of immunity in order to establish jurisdiction. *See Lonsdale v. United States*, 919 F.2d 1440, 1443–44 (10th Cir. 1990). Here, neither party disputes the existence of a federal issue sufficient to confer jurisdiction under the general federal question statute, 28 U.S.C. § 1331; at issue is only whether Normandy can demonstrate that the government has waived sovereign immunity to suit in federal district court.[2]

On appeal, Normandy primarily asserts that the government has waived sovereign immunity by virtue of the Administrative Procedure Act ("APA"), which provides that, in most circumstances, "[a]n action in a court of the United States seeking relief other than money damages . . . shall not be dismissed nor

---

[2]"[F]or matters outside the scope of the Tucker Act, section 1331 gives district courts jurisdiction to review agency action," such as Normandy's claim that HUD violated regulations including 24 C.F.R. § 200.857(c)(3) and 24 C.F.R. § 886.320. *Hamilton Stores, Inc. v. Hodel*, 925 F.2d 1272, 1277 n.11 (citing *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

relief therein be denied on the ground that it is against the United States." 5

U.S.C. § 702; *see also Robbins*, 438 F.3d at 1080. We have noted, however, that

"this waiver does not apply where any other statute that grants consent to suit

expressly or impliedly forbids the relief which is sought." *Robbins*, 438 F.3d at

1080 (internal quotations omitted). As the district court correctly recognized, we

have found the Tucker Act to "impliedly forbid" certain relief in district court,

such that the APA's waiver of sovereign immunity does not apply. The Tucker

Act "vests exclusive jurisdiction with the Court of Federal Claims for claims

against the United States founded upon the Constitution, Acts of Congress,

executive regulations, or contracts and seeking amounts greater than $10,000."

*Burkins v. United States*, 112 F.3d 444, 449 (10th Cir. 1997). In *Robbins*, we

joined several other circuits in concluding that the Tucker Act "'impliedly

forbid[s]' federal courts from ordering declaratory or injunctive relief, at least in

the form of specific performance, for *contract claims* against the government, and

that the APA does not waive sovereign immunity for such claims." 438 F.3d at

1082 (emphasis added).

The district court understood Normandy's claim to fall within the ambit of

this proscription. *See Normandy Apartments, Ltd.,* 2007 WL 3232610, at *2–3.

As a result, it concluded that the United States had waived sovereign immunity to

suit only in the Court of Federal Claims, leaving federal district courts without

jurisdiction. We review its conclusion that it lacked subject matter jurisdiction de

novo. *U.S. West, Inc. v. Tristani*, 182 F.3d 1202, 1206 (10th Cir. 1999). In so doing, we must resolve two questions. First, does Normandy's claim seek "relief other than money damages," such that the APA's general waiver of sovereign immunity is even implicated? Second, does the Tucker Act expressly or impliedly forbid the relief that Normandy seeks, such that the APA's waiver does not apply? These questions require us to characterize the nature both of Normandy's claim and of the relief it seeks.

## A. Does Normandy's Claim Seek Relief Other than Money Damages?

Whether a claim seeks "relief other than money damages" actually encompasses two distinct questions: 1) Is the claim for *monetary* relief?; 2) Is the claim for *damages*? *See generally Bowen v. Massachusetts*, 487 U.S. 879, 895–901 (1988). For the following reasons, we answer both questions in the negative and therefore conclude that Normandy's claim seeks "relief other than money damages."

### 1. Is the claim for monetary relief?

The Tucker Act mandates that the Claims Court has exclusive jurisdiction over claims against government agencies founded on contract or federal law only when "the action seeks monetary relief in excess of $10,000." *Hamilton Stores, Inc. v. Hodel*, 925 F.2d 1272, 1277 (10th Cir. 1991) (internal quotations omitted). To determine whether a claim seeks monetary relief, however, a reviewing court must look beyond the face of the complaint. "[T]he Court of Federal Claims'

exclusive jurisdiction may not be avoided by 'framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief when, in reality, the thrust of the suit is one seeking money from the United States." *Burkins*, 112 F.3d at 449 (quoting *New Mexico v. Regan*, 745 F.2d 1318, 1322 (10th Cir. 1984)). Even if a complaint does not explicitly seek monetary relief, the Court of Federal Claims' exclusive jurisdiction is triggered whenever the "prime objective" or "essential purpose" of a suit is to recover money in excess of $10,000 from the federal government. *See Burkins*, 112 F.3d at 449. "A plaintiff's prime objective or essential purpose is monetary unless the non-monetary relief sought has significant prospective effect or considerable value apart from the claim for monetary relief." *Id.* (internal quotations omitted).

In the instant action, Normandy did not expressly seek monetary relief. Rather, it asked for "temporary and permanent injunctive relief . . . against [HUD's] attempts to terminate Housing Assistance Payments to Normandy on the basis of [its] inspection scores and reports." Complaint 16. The district court, however, understood Normandy's claim to be, in essence, a disguised claim for monetary relief. *See Normandy Apartments, Ltd.,* 2007 WL 3232610 at *2 ("Although the relief sought in the complaint is couched as injunctive and declaratory relief . . . what plaintiff is really seeking is money from the federal government, that is, the stream of Section 8 Housing Assistance Payments allegedly due under the HAP Contract.").

We disagree. In those cases in which we have found that the "prime objective" of an equitable action is, in actuality, the procurement of money in excess of $10,000 from the federal government, we have typically found dispositive that the action lacks "any significant prospective effect or considerable value" apart from facilitating a monetary claim to compensate for *past* wrongdoing. *See, e.g.*, *Burkins*, 112 F.3d at 449. In *Burkins*, for example, an Army veteran petitioned for a writ of mandamus ordering the Army to correct his military records to reflect that he received a disability discharge twenty years earlier. Although the relief Mr. Burkins sought was not monetary on its face, we recognized that "his prime objective was to obtain benefits exceeding $10,000" from the retroactive disability payments he would have been owed upon obtaining a successful verdict. *Id.* We found that Mr. Burkins failed to show how the relief he sought had any significant prospective effect or value apart from the retroactive benefits, as he had already secured entitlement to future benefits. *See id.* at 449–50. Because we concluded that the primary purpose of Mr. Burkins's suit was to obtain monetary benefits for past wrongs, we determined that the Court of Federal Claims had exclusive jurisdiction under the Tucker Act. *Id.* at 450. *See also Francis E. Heydt Co. v. United States*, 948 F.2d 672, 674–77 (10th Cir. 1991) (finding no "significant prospective effect" apart from a claim for monetary relief for past harms).

In contrast, the focus of Normandy's claim, when filed, was entirely prospective in nature. At the time of the district court's hearing on Normandy's preliminary injunction request on October 30, 2007, HUD had not yet terminated benefits and Normandy did not have any claim for past moneys due. *See* Aplt. Br. 13–14 (noting that HUD was not scheduled to terminate benefits until November 1, one day later). Had Normandy's action for injunctive relief been successful, it would not have enabled a claim for money damages; instead, it would have prevented such a claim from arising in the first place.

Normandy's claim was primarily designed not to enable a claim for past pecuniary harm, but to preserve an ongoing relationship. In such instances, we have found a claim's "prime objective" to be to obtain equitable relief, not monetary relief. *See Francis E. Heydt Co.*, 948 F.2d at 676; *see also Bowen*, 487 U.S. at 905 n.41 (recognizing that whether relief is likely to have "significant prospective effect upon [an] ongoing . . . relationship" is relevant to applicability of the APA's waiver of sovereign immunity). Normandy's claim is therefore similar to the claim in *Southeast Kansas Community Action Program Inc. v. Secretary of Agriculture of the United States*, 967 F.2d 1452 (10th Cir. 1992). In that case, a nonprofit corporation sued the U.S. Secretary of Agriculture and the Secretary of the Kansas Department of Health and Environment, challenging the "Defendants' failure to renew its contract to administer a federal child nutrition program." *Id.* at 1454. We concluded that the essential purpose of the suit was to

obtain equitable relief, finding significant that the plaintiff sought "an Order declaring [the] regulations void" and "a mandatory injunction compelling Defendants to continue to provide funds for Plaintiff's operation of the [federal] program until such time as an adequate hearing is held on the merits of Plaintiff's disqualification and failure to renew Plaintiff's contract." *Id.* at 1456. Similarly, Normandy sought an order declaring HUD in violation of its regulations and injunctive relief compelling HUD to continue funding its Section 8 housing activities until the merits of Normandy's claim were resolved. *See* Aplt. App. 20.

It is true, of course, that should Normandy's claim prove successful today—over a year after HUD ceased disbursing funds to the company—this might enable a subsequent claim for monetary relief. This, however, does not alter our assessment. "[D]istrict court jurisdiction over a suit for nonmonetary relief is not foreclosed by the fact that it may later be the basis for an award of damages against the United States." *Hahn v. United States*, 757 F.2d 581, 589 (3d Cir. 1985). Indeed, the Supreme Court has "rejected the argument that the Claims Court should retain jurisdiction in all suits where Plaintiff's requested relief would have an impact on the federal treasury." *Se. Kan. Cmty. Action Program*, 967 F.2d at 1456 (citing *Bowen*, 487 U.S. 879). The fact that in some later suit, "collateral estoppel may require the Claims Court to adhere to a district court determination of the lawfulness of government conduct" does not preclude the district court from exercising jurisdiction at this point. *Hahn*, 757 F.2d at

-12-

589.  Because Normandy's claim for a permanent injunction, if successful, could enable the restoration of Normandy's contractual relationship with the government, it retains significant prospective value today. We therefore conclude that the claim's prime objective remains securing equitable relief.

### 2.    *Is the claim for damages?*

We also note that Normandy's claim does not seek "damages" within the meaning of 5 U.S.C. § 702.  In *Bowen*, the Supreme Court explained that not all species of monetary relief constitute "money damages" as defined by that Act.  Specifically, it distinguished between "money damages"—or compensatory relief to *substitute* for a suffered loss—and those specific remedies that have the effect of compelling monetary relief; the Court determined that only the former are exempted from the waiver of sovereign immunity contained in § 702 of the APA. *See Hamilton Stores, Inc.*, 925 F.2d at 1278 n.12 (describing the holding in *Bowen*, 487 U.S. at 894–901).

Normandy's complaint did not seek compensatory damages.  Instead, it sought equitable relief to prevent against HUD's allegedly premature termination of Section 8 payments.  Even if we agreed with the district court that Normandy's complaint sought specific performance of a contract, this would not amount to a suit for money damages; as a result, Normandy's suit would still seek "relief other than money damages."  *See Bowen*, 487 U.S. at 900 ("[C]laims for specific

relief, [even when] monetary, are for 'relief other than money damages' and therefore within the waiver of sovereign immunity in section 702.")

Because we find that the primary purpose of Normandy's suit is to neither secure monetary relief nor damages, we conclude that it is an action seeking "relief other than money damages," such that the APA's waiver of sovereign immunity is implicated.

**B. Does the Tucker Act Expressly or Impliedly Forbid the Relief Sought?**

Even when a claim seeks relief other than money damages, the "[APA's] waiver does not apply where any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Robbins*, 438 F.3d at 1080 (internal quotations omitted). We "read the APA in conjunction with other jurisdictional statutes waiving sovereign immunity in order to determine whether those statutes forbid the relief sought in the case at hand." *Id.* (internal quotations omitted). In *Robbins*, we concluded that the Tucker Act "'impliedly forbid[s]' federal courts from ordering declaratory or injunctive relief, at least in the form of specific performance, for *contract claims* against the government, and that the APA thus does not waive sovereign immunity for such claims." *Id.* at 1082. (emphasis added). Importantly, however, while the plain language of the Tucker and Little Tucker Acts does not distinguish between claims founded on contracts and those founded on the Constitution, statutes, or regulations, we—like other circuits—have limited the application of the "impliedly forbids" exception

-14-

to the APA waiver of sovereign immunity to contract claims.[3]  *See Robbins*, 438

F.3d at 1083 n.9; *see also Sharp v. Weinberger*, 798 F.2d 1521, 1523–24 (D.C.

Cir. 1986) (Scalia, J.).  Therefore, in order to determine whether the Tucker Act

impliedly forbids the relief sought in this case, we must evaluate whether

Normandy's claim is properly understood as one founded on contract or on the

federal Constitution, statutes, or regulations.

We recently had occasion to elaborate on the proper approach to

categorizing a claim as contractually or otherwise-based.  In *Robbins*, we quoted

with approval the D.C. Circuit's reasoning in *Megapulse, Inc. v. Lewis*, 672 F.2d

959, 968 (D.C. Cir. 1982) that "[t]he classification of a particular action as one

which is or is not 'at its essence' a contract action depends both on the source of

the rights upon which the plaintiff bases its claims, and upon the type of relief

sought (or appropriate)."  *Robbins*, 483 F.3d at 1083.  Although the district court

recognized that the two counts of Normandy's complaint were based on distinct

sources—"upon an express contract with the United States and on regulations of

---

[3]This may follow from the fact that if the Tucker Act were understood to impliedly forbid claims sounding in regulation, statute, and the Constitution, in addition to contracts, the APA's waiver of sovereign immunity would become meaningless.  *See* Richard H. Seamon*, Separation of Powers and the Separate Treatment of Contract Claims Against the Federal Government for Specific Performance,* 43 VILL. L. REV. 155, 191 (1998).  The different treatment may also follow from historical differences in the entertainment of contractual suits and non-contractual suits even prior to the 1976 amendments to the APA codifying the waiver of sovereign immunity in cases where "relief other than money damages" is sought.  *See Sharp v. Weinberger*, 798 F.2d 1521, 1523–24 (D.C. Cir. 1986).

an executive department"—it erroneously concluded that both claims sounded equally in contract. We agree with the district court that "Count II," alleging an ordinary breach of contract, seeks equitable relief for a contract claim against the government. Because the Court of Federal Claims has exclusive jurisdiction to hear such a claim, the district court properly declined to take jurisdiction over it. We disagree, however, with the district court's similar characterization of "Count I," in which Normandy alleged HUD's violation of various federal regulations.

It is true, of course, that because the regulatory violations that Normandy asserts implicate its contractual relationship with HUD, "plaintiff could not even assert [its claim] if it did not have a . . . [c]ontract with HUD." *Normandy Apartments, Ltd.*, 2007 WL 3232610 at *2. But this does not convert a claim asserting rights based on federal regulations into one which is, "at its essence," a contract claim. When the source of rights asserted is constitutional, statutory, or regulatory in nature, the fact that resolution of the claim requires some reference to contract does not magically "transform [the] action . . . into one on the contract and deprive the court of jurisdiction it might otherwise have." *Megapulse*, 672 F.2d at 968. Rather, "litigants may bring statutory and constitutional claims in federal district court even when the claims depend on the existence and terms of a contract with the government." *Robbins*, 438 F.3d at 1083–84 (quoting *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 610 (D.C. Cir. 1992)). Similarly, "[a]n order compelling the government to follow its

-16-

regulations is equitable in nature and is beyond the jurisdiction of the Court of Federal Claims." *Ferreiro v. United States*, 501 F.3d 1349, 1353 n.3 (Fed. Cir. 2007).

In *Sharp v. Weinberger*, then-Judge Scalia addressed the implications of the Tucker Act to a case, like ours, in which the plaintiff asserted that the government's intent to breach a contract would not only violate the terms of that contract, but would also be contrary to federal regulations (as well as statutes and the Constitution). 798 F.2d 1521. As the D.C. Circuit described in *Transohio*, Judge Scalia answered the question of jurisdiction by dividing the claims into categories:

> One category was [t]hat part of appellant's complaint and prayer seeking a declaration that he had a valid contract with appellees and an injunction requiring appellees to perform that contract. The district court, Judge Scalia wrote, lacked jurisdiction to hear that part of the complaint, the contract claim, because Tucker Act jurisdiction over contract claims was exclusive, and § 702 of the APA did not waive sovereign immunity.

> Over the other major category of . . . claims, Judge Scalia wrote, the district court properly took jurisdiction. *The other category included appellant's claims that his transfer would be contrary to regulations,* statutes and the Constitution, and his request for a declaration to that effect and an injunction of the transfer. As to those claims, [t]he District Court properly exercised jurisdiction to consider appellant's claim that his reassignment would violate federal regulations, statutes and the Constitution. Tucker Act jurisdiction over those claims was not exclusive, and § 702 waived sovereign immunity.

*Transohio*, 967 F.2d at 610 (describing *Sharp*, 798 F.2d at 1523–24) (emphasis added) (internal quotations and citations omitted). Although *Robbins* itself dealt

-17-

only with a constitutional claim, the D.C. Circuit's approach in *Megapulse* and *Transohio* would support extending the holding of *Robbins* to regulatory and statutory claims against the government. What we implied in *Robbins*, we now explicitly hold: when a party asserts that the government's breach of contract is contrary to federal regulations, statutes, or the Constitution, and when the party seeks relief other than money damages, the APA's waiver of sovereign immunity applies and the Tucker Act does not preclude a federal district court from taking jurisdiction.

We thus conclude that the district court has jurisdiction to consider Normandy's regulatory claims and should proceed to address them on the merits.

### III. Conclusion

For the foregoing reasons, we REVERSE the district court's order of dismissal as to Count I of Normandy's complaint, and REMAND for further proceedings on the merits. We AFFIRM the district court's dismissal of Count II. Since the contractual and regulatory rights asserted and relief requested are essentially congruent, we need not address whether district court jurisdiction over Normandy's contractual claims is appropriate on any of the additional grounds Normandy asserts.