NEWMAN, Circuit Judge,
dissenting.
The United States, acting through the Department of Housing and Urban Development (HUD), has since 1968 contracted with Normandy Apartments to provide federally subsidized low-income apartments, called “Section 8 housing” as established by the National Housing Act, 42 U.S.C. § 1437f, After inspections by HUD, wherein HUD criticized Normandy’s compliance with the requirement that the apartments be maintained in “decent, safe, and sanitary” condition, in 2007 HUD terminated its subsidy payments. Normandy objected to the termination, stating that the perceived non-compliance was based on temporary disruption due to the ongoing apartment project of installing double-pane windows throughout the complex, and that it had inadequate opportunity to remedy any perceived deficiency in property maintenance.
My concern relates to whether the United States was correctly eliminated from its contracts with Normandy Apartments, thereby eliminating Tucker Act. jurisdiction in the Court of Federal Claims. The government successfully argued this position in the Oklahoma district court and in the Tenth Circuit, and successfully argued the contrary position in the Court of Federal Claims. The panel majority now de *946 nies Normandy Apartments all access to judicial review.
Discussion
Normandy Apartments had initially filed suit against the United States Department of Housing and Urban Development in the United States District Court for the Western District of Oklahoma, asking that court to require HUD to continue the rental subsidies at least until the merits of the issue were resolved. The United States responded that Normandy was in the wrong court, and that this was a Tucker Act suit on a contract with the United States. The government stated that “this case belongs in the Claims Court and [the Western District of Oklahoma] lacks jurisdiction.” U.S. Dist. Ct. Br. 20. The district court agreed. Normandy Apartments, Ltd., v. U.S. Dep’t of Hous. & Urban Dev., No. Civ.-07-1161-R, 2007 WL 3232610 (W.D.Okla. Nov. 1, 2007).
Normandy appealed to the Tenth Circuit, and the United States again moved for dismissal, stating that these were contracts with the United States and were actionable only in the Court of Federal Claims under the Tucker Act. U.S. Br. to 10th Cir. (“The Tucker Act impliedly forbids the relief sought in this case”). The Tenth Circuit agreed, ruling that Normandy’s contract claims were within the “exclusive jurisdiction” of the Court of Federal Claims. Normandy Apartments., Ltd. v. U.S. Dep’t of Hous. & Urban Dev., 554 F.3d 1290, 1295-96 (10th Cir.2009).
Normandy then filed suit in the Court of Federal Claims. However, in the Court of Federal Claims the United States argued that there was no jurisdiction in the Court of Federal Claims. The government argued that the contracts were not with the United States, but with an Oklahoma state agency that had signed the most recent Renewal Agreement as “Contract Administrator.” The Court of Federal Claims agreed, and dismissed the suit.
Thus the United States obtained dismissal of the contract claims by the Oklahoma district court and the Tenth Circuit on the argument that the contracts are with the United States and can be litigated only in the Court of Federal Claims. The United States then obtained dismissal of the contract claims by the Court of Federal Claims on the argument that the contracts are not with the United States, but with the Oklahoma Contract Administrator. Normandy has exhausted the supply of courts in which it can seek resolution of its claim for breach of contract. In its shifting positions, the government avoided judicial determination of the merits for eight years. I respectfully dissent.

The HUD contracts

Normandy Apartments had two contracts with the United States Department of Housing and Urban Development. The Housing Assistance Payments (HAP) Renewal Agreement of 2004 traces its renewals to 1968. The Regulatory Use Agreement of 2000 stated the conditions of Normandy’s prepayment of its mortgage, and also contained all of the substantive terms of the Renewal Agreement.
The Renewal Agreement states that “the purpose of the Renewal contract is to renew the expiring contract for a new term,” Contract Section 4c. Section 4 authorizes HUD to assign the contract to a PHA (public housing agency), but provides that “[notwithstanding such assignment, HUD shall remain a party to the provisions of the Renewal Contract that specify HUD’s role pursuant to the Renewal Contract, including such provisions of Section 9 (HUD requirements), Section 10 (statutory changes during term), and section 11 (PHA default) of the Renewal Contract.” Section 4(a)(2).
*947 The Renewal Agreement, but not the Regulatory Use Agreement, was signed by the Oklahoma Housing and Finance Authority as “Contract Administrator,” as authorized by § 1437f(b)(l) of the Housing Act. No substantive changes were made to HUD’s continuing authority and responsibility. The government does not dispute that the rental subsidies continued to be provided by HUD, and that HUD retained full control and responsibility for all of the contract provisions, including the rights of inspection and termination as here exercised.
In accordance with the contracts, HUD conducted periodic inspections of the Normandy Apartments property. In 2007 HUD terminated the federal subsidy payments, on the ground that Normandy had not properly ’maintained the apartments, leading to the litigation starting in Oklahoma in October 2007, and ending with the Federal Circuit.

Suit in Oklahoma District Court

Normandy filed suit in the District Court for the Western District of Oklahoma, seeking to enjoin the termination that was ordered by HUD, and to require that the rental subsidies be continued at least during resolution of the issues in dispute. The United States moved for dismissal on jurisdictional grounds, stating that at “issue in the instant case are agreements between Plaintiff and HUD.” Def.’s Resp. to Pl.’s Mot. for Prelim. Inj. at 2. As the district court recited, the United States raised the question “whether this court has jurisdiction to entertain this action or whether jurisdiction lies exclusively in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491.” Normandy, 2007 WL 3232610, at *1.
The government provided the affidavit of Mr. Herman Ransom in his position as Director of the HUD Multifamily Hub responsible for HUD’s housing programs in the region that includes Oklahoma. He averred that “Normandy Apartments, Ltd. (‘the owner’) entered into a Housing Assistance Payments (‘HAP’) contract with HUD September 2004,” and that the contracts provided that HUD would pay Monthly Rental Assistance “according to HUD’s regulations and administrative procedures,” citing Agmt. § 7(a). Ransom Aff. Mr. Ransom also described the Regulatory Use Agreement of 2000, between Normandy Apartments and HUD. He stressed that the Normandy Apartments contracts are with the United States, with elaboration such as “HUD has not authorized OHFA to conduct physical inspections of Normandy Apartments.” Ransom Aff. Thus the government argued that these were contracts with the United States, and that remedy for the asserted breach was available only in the Court of Federal Claims. The Oklahoma district court agreed, and ruled that “Plaintiffs claims arise out of a contract with the government and are for breach of that contract and breach of regulations covering and relating to that contract, the latter of which plaintiff could not even assert if it did not have a HAP contract with HUD.” Normandy, 2007 WL 3232610, at *2.
The district court recited “HUD’s decision to abate Housing Assistance Payments and to terminate the HAP contract,” and reiterated that “plaintiffs claims are founded upon an express contract with the United States and on regulations of an executive department. See 28 U.S.C. § 1491.” Normandy, 2007 WL 3232610, at *1, *2. The court 'held that “jurisdiction over this case lies exclusively in the United States Court of Federal Claims pursuant to the Tucker Act.” Id. at *2.

Appeal to the Tenth Circuit

Normandy Apartments appealed to the Tenth Circuit, and the government again *948 moved for dismissal for lack of jurisdiction. The Circuit court held that although Normandy’s APA claims were within the district court’s jurisdiction, since the contracts were between the United States and Normandy Apartments, the count “alleging an ordinary breach of contract, seeks equitable relief for a contract claim against the government. Because the Court of Federal Claims has exclusive jurisdiction to hear such a claim, the district court properly declined to take jurisdiction over it.” Normandy, 554 F.3d at 1299.
The Tenth Circuit observed that “[u]n-der HUD regulations and Normandy’s contract with HUD, Normandy was required to maintain the units,” id. at 1294, and reiterated that the Court of Federal Claims is the exclusive venue for suit for breach of a contract of this magnitude with the United States, id. at 1299.

The Court of Federal Claims

Normandy Apartments then filed suit in the Court of Federal Claims. However, unlike the position on which it had prevailed in the district court and the Tenth Circuit, the government argued that the contracts are not with the United States, but with the Oklahoma housing authority as “Contract Administrator.” The princi-pies of judicial estoppel foreclose such maneuvers:
Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.
New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); see, e.g., Pegram v. Herdrich, 530 U.S. 211, 227 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) (“Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.”).
This is not a new principle, see Davis v. Wakelee, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578 (1895):
It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.
Id. at 689, 15 S.Ct. 555. Nor is this principle new to the Federal Circuit. In Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed.Cir.1996) this court recognized that “where a party successfully urges a particular position in a legal proceeding it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed.”
On this appeal the government does not dispute that HUD retained its full contract rights and obligations, including the right of termination. It was HUD that inspected the property, and it was HUD that terminated the contracts. This relationship is not overridden by the selection of a state housing authority as “contract administrator.” By the Housing statute, HUD “is authorized to enter into annual contributions contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments,” 42 U.S.C. § 1437f(b)(l), and “[t]he Secretary shall embody the provisions for such annual contributions in a contract guaranteeing their payment,” 42 USC § 1437e(a)(l). However, such authorization does not remove HUD from its *949 contractual obligations to the property owner.
HUD’s public housing Guidebook for Section 8 contracts is explicit that HUD is “contractually bound” by the Renewal Contract executed by a state housing authority:
When a Renewal Contract is executed by a PHA [public housing authority] pursuant to this Guidebook, in accordance with HUD requirements and on the form prescribed by HUD, HUD is contractually bound by the Renewal Contract provisions that specify HUD’s role pursuant to the Renewal Contract.
William C. Apgar, HUD Office of Multifamily Housing, Section 8 Renewal Policy (2001). The Guidebook is explicit that a renewal executed by a state housing authority does not relieve HUD of its contract obligations. And although the 2004 Renewal Agreement was signed by the Oklahoma authority, the Regulatory Use Agreement, which incorporates all of the contract obligations between HUD and Normandy Apartments, was executed by HUD, with no reference to any state authority.
Despite these explicit statements of HUD’s position, obligations, and authority, the Court of Federal Claims held that the “plaintiff is unable to enforce its rights in that contract against the federal government because the United States was not a party to it.” Fed. Cl. Op. at 20. The Court of Federal Claims also rejected Normandy’s alternative ground that its property had been taken in violation of its Fifth Amendment rights. Normandy now appeals to the Federal Circuit.

Appeal to the Federal Circuit

The government no longer argues that these contracts are not with the United States, and does not directly challenge Tucker Act jurisdiction. The government recites that HUD funded the federal subsidy to Normandy, that HUD inspected the Normandy Apartment premises, and that HUD terminated the subsidy payments. See, e.p.,.U.S. Br. 6-7 (“HUD abated — that is, suspended — funding for HAP payments by OFHA to Normandy”). The government does not argue in this court that the Oklahoma “Contract Administrator” removed the United States from the contracts with Normandy.
Instead, the United States now seeks to argue the merits of the termination, stating that HUD did not breach the contracts because Normandy had not maintained the apartments in “decent, safe, and sanitary condition.” U.S. Br. 7. The propriety of the termination is the issue for which Normandy' has been seeking a forum, now for eight years. The merits of the contract claim have never been decided. And the Federal Circuit is not a trial forum, for ab initio resolution of Normandy’s claim.

Summary

The United States argued successfully in the Oklahoma district court and the Tenth Circuit that this case belongs in the Court of Federal Claims because the contracts are with the United States. The United States then argued successfully in the Court of Federal Claims that the contracts are not with the United States. This is not only a classic exemplar of judicial estoppel, but the jurisdictional ruling of the Court of Federal Claims is incorrect, for the contracts are indeed with the United States, and subject to' the Tucker Act.
I do not know how the merits would have been decided, had they been litigated. With the court’s ruling today, however, all paths to judicial resolution appear to be *950 closed. This is not the process envisioned by President Lincoln, his words carved at the entrance to this courthouse: “It is as much the duty of government to render prompt justice against itself in favor of citizens as it is to administer the same between private individuals.”
J respectfully dissent,