**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 5, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PIERRE WATSON,

     Plaintiff - Appellant,

v.

LISA HOLLINGSWORTH, Warden, USP-
Leavenworth, in her individual and official
capacity; RICHARD W. SCHOTT,
Regional Counsel, in his individual and
official capacity; MICHAEL K. NALLEY,
Regional Director, in his individual and
official capacity,

     Defendants - Appellees,

and

JOSH EVANS, Senior Officer Specialist,
USP-Leavenworth, in his individual and
official capacities,

     Defendant.

No. 16-3008
(D.C. No. 5:13-CV-03035-EFM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MURPHY**, and **PHILLIPS**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court authorized private citizens to seek damages for constitutional torts committed by federal officials. Courts disallow *Bivens* claims against federal officials acting in their official capacities and limit liability to the federal employee's own acts. In this case, the district court dismissed Pierre Watson's official-capacity *Bivens* claims under Fed. R. Civ. P. 12(b)(1). The district court dismissed Watson's individual-capacity *Bivens* claims on summary judgment because Watson had failed to establish any personal participation by the Defendants and had failed to present any evidence showing a constitutional violation.[1] Watson now appeals and moves (1) to proceed *in forma pauperis* (IFP) and (2) for appointment of appellate counsel. We affirm the district court's dismissal, grant Watson's IFP motion, and deny his motion to appoint counsel.

## BACKGROUND

On February 28, 2013, Watson filed this lawsuit purporting to assert individual and official-capacity *Bivens* claims against Josh Evans, Lisa Hollingsworth, Richard W. Schott, and Michael K. Nalley. On January 21, 2014, Watson amended his Complaint to add additional factual allegations, again asserting *Bivens* claims against the same Defendants. Watson's allegations derived from a June 27, 2011 altercation between Watson and corrections officer Evans.

---

[1] Josh Evans is identified in the caption as a Defendant, but not as one of the Defendants-Appellees. As noted in this order, Watson never served Evans with process, and Evans never personally appeared and defended. So the discussion of the district court's rulings on the merits pertains to the three Defendants-Appellees, Hollingsworth, Schott, and Nalley.

In his Amended Complaint, Watson alleged that Evans had physically assaulted him, causing severe head trauma. Watson alleged that Evans had repeatedly punched him in the face while Watson was handcuffed. Watson also alleged that Evans had "grabbed [his] throat . . . very tightly . . . to the point of not being able to breath [sic]." R. Vol. 1 at 125. Watson further alleged that Evans had slammed his face into the ground and that other unknown officers had repeatedly struck him in the head even though he had been restrained on the floor for minutes.

Watson does not allege that Hollingsworth, Schott, or Nalley (collectively referred to as Defendants-Appellees) participated in this attack. Instead, Watson merely alleges that Hollingsworth "conspire[d] with [Schott and Nalley] to deprive [Evans] of his equal protection of the laws as guaranteed by the 8th and 14th Amendments of the United States Constitution." R. Vol. 1 at 126.

Hollingsworth was the warden at the USP Leavenworth correctional facility during Watson's incarceration. Schott was the Bureau of Prisons' Regional Counsel, and Nalley was the Bureau of Prisons' Regional Director. Watson alleges that Hollingsworth "refused to answer [his] Request for Administrative Remedy" and "allowed C/O Evans to assault Plaintiff and not be disciplined for his infliction of pain." R. Vol. 1 at 126–27. As for Schott and Nalley, Watson alleges that they, along with Hollingsworth, "refused to answer [his] grievances, letters, and continued to keep [him] in the Special Housing Unit ("SHU") under investigation pending prosecution against Plaintiff." *Id.* at 127.

After Watson filed his Amended Complaint, the district court issued summonses for all four Defendants. Watson successfully served Schott and Nalley. But Hollingsworth and Evans were no longer employed at USP Leavenworth, and Watson never served them with a Summons and Complaint. Even though she was never served, Hollingsworth appeared and participated in this action. Evans has never been served and has never appeared.

Hollingsworth, Schott, and Nalley responded to Watson's Complaint by filing a motion to dismiss, or in the alternative, a motion for summary judgment. In their motion, Defendants-Appellees asserted that the district court should dismiss Watson's official-capacity *Bivens* claims for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Next, Defendants-Appellees asserted that the district court should dismiss all of Watson's individual-capacity *Bivens* claims under Fed. R. Civ. P. 12(b)(6) because Watson had failed to exhaust his administrative remedies. Third, Defendants-Appellees argued that the district court should grant summary judgment based on qualified-immunity grounds. Finally, Defendants-Appellees argued that the district court should dismiss the *Bivens* claims because Watson had failed to show any personal participation by Defendants-Appellees as required to state a claim under *Bivens*.

The district court concluded that it lacked jurisdiction over the official-capacity *Bivens* claims, which are claims against the United States for which it had not waived sovereign immunity. Thus, it dismissed those claims under Fed. R. Civ. P. 12(b)(1). Next, noting that both parties had attached materials outside of the

4

Complaint, the district court considered the individual-capacity *Bivens* claims under the summary-judgment standard. Under the summary-judgment standard, it rejected the Government's argument that Watson had failed to exhaust his administrative remedies. Construing Watson's claims broadly, the district court concluded that Watson had alleged that Defendants-Appellees violated his constitutional rights by (1) failing to discipline Evans for his alleged assault on Watson; (2) failing to respond to Watson's correspondence or his agency grievances related to the assault; and (3) placing him in the Special Housing Unit after the alleged assault. The district court also construed Watson's Complaint to allege that Hollingsworth had covered up medical reports and attempted to destroy video footage of the alleged assault.

Addressing these claims, the district court first concluded that Watson had presented insufficient evidence to impose supervisory liability under *Bivens*. Next, it concluded that the Defendants'-Appellees' alleged failures to respond to Watson's grievances and their decision to place him in the Special Housing Unit would not amount to constitutional violations. And finally, the district court concluded that Watson had presented no evidence that Hollingsworth had covered up any medical reports or attempted to destroy video footage. Thus, the district court granted summary judgment in favor of the Defendants-Appellees and dismissed all the claims against them. The district court waited to enter a judgment because Watson's claims against Evans survived.

On December 17, 2014, the same day it dismissed Watson's claims against Defendants-Appellees Hollingsworth, Schott, and Nalley, the district court issued a

5

Notice and Order Regarding Service of Defendant Evans. In that Order, the district court provided Watson thirty days to serve Evans or to provide the U.S. Marshals Service with a current location or address for Evans. Watson didn't respond. On December 2, 2015, almost a year later, the district court issued a Notice and Order to Show Cause requiring Watson, on or before December 28, 2015, to show why his case against Evans should not be dismissed for lack of prosecution under Fed. R. Civ. P. 41(b). Watson responded by asking the district court for a 30-day extension of time. The district court granted Watson an extension until January 28, 2016 to respond to its order to show cause. Watson didn't respond to the district court's order to show cause.

On February 5, 2016, after providing Watson multiple opportunities to serve Evans, the district court dismissed Watson's claims against Evans for failure to prosecute. Watson appealed the district court's dismissal of his claims against Defendants.

## DISCUSSION[2]

### I.    Watson's Notice of Appeal

---

[2] Because Watson appears pro se, "we construe his pleadings liberally." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). In doing so, we are more lenient with deficient pleadings, failure to cite appropriate legal authority, and confusion of legal theories. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But we "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* And we will not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

6

On appeal, the Government argues that Watson's Notice of Appeal challenges the district court's repeated denials of his requests for appointment of counsel, not the dismissal of Watson's claims against Hollingsworth, Nalley, and Schott. From this, the Government argues that we lack appellate jurisdiction to review the district court's dismissal of Watson's claims. We disagree.

"Rule 3 of the Federal Rules of Appellate Procedure conditions federal appellate jurisdiction on the filing of a timely notice of appeal." *Smith v. Barry*, 502 U.S. 244, 245 (1992). Rule 3(c) specifies the required content of notices of appeal: they must "specify the party or parties taking the appeal"; "designate the judgment, order or part thereof being appealed"; and "name the court to which the appeal is taken." Fed. R. App. P. 3(c). We liberally construe these requirements, meaning that even if the filed papers are "technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Smith*, 502 U.S. at 248 (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–17 (1988)). "While a notice of appeal must specifically indicate the litigant's intent to seek appellate review, . . . the purpose of this requirement is to ensure that the filing provides sufficient notice to other parties and the courts." *Id.* If any "document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal." *Id.* at 248–49. To this already lenient standard, we add that Watson filed his pleadings pro se, requiring us to hold his pleadings to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110

7

(10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").

On December 31, 2015, before the district court dismissed the claims against Evans but after it decided the merits of Watson's claims against the Defendants-Appellees, Watson filed a notice of appeal. In the Notice of Appeal, Watson said that he was appealing the district court's orders denying him counsel. Upon receipt of the Notice of Appeal, we abated the appeal because Watson had filed a separate motion asking the district court to reconsider its order dismissing Watson's claims against Evans and the Defendants-Appellees, which motion was still pending before the district court. On February 5, 2016, after dismissing the claims against Evans, the district court entered judgment in favor of the Defendants-Appellees. Once the district court dismissed the claims against Evans, there were "no claims or defendants remaining in this matter," so the district court closed the case and we lifted the abatement of Watson's December 15 appeal. R. Vol. 1 at 9. On March 1, 2016, within 30 days of the district court's judgment, Watson filed his Opening Brief, stating that he was appealing the district court's dismissal of his claims. *See* Opening Br. at 3 (listing first issue as "Dismissal of defendants from Civil Suit."). Because Watson filed his Opening Brief within 30 days from the date of the Judgment, it is effective as a notice of appeal. *Smith*, 502 U.S. at 249 ("[The Federal Rules] do not preclude an appellate court from treating a filing styled as a brief as a notice of appeal . . . if the filing is *timely* under Rule 4 and conveys the information required by Rule 3(c).").

8

"Even if a notice fails to properly designate the order from which the appeal is taken, this Court has jurisdiction if the appellant's intention was clear." *Fleming v. Evans*, 481 F.3d 1249, 1253–54 (10th Cir. 2007); *see also Sines v. Wilner*, 609 F.3d 1070, 1074 (10th Cir. 2010). The clear intent of Watson's Opening Brief was to appeal the district court's order dismissing his claims against Evans and the Defendants-Appellees.[3] "[W]e should not be hypertechnical in ruling that a notice of appeal does not challenge a judgment or order that the appellant clearly wished to appeal." *Sines*, 609 F.3d at 1074. Rather, "[a] mistake in designating the judgment appealed from is not always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced." *Id.* Taken together with his Notice of Appeal, we construe Watson's Opening Brief as the functional equivalent of the notice of appeal designating the district court's judgment. Thus, we have jurisdiction to consider the district court's dismissal of Watson's claims against Defendants.

## II.    Official-Capacity *Bivens* Claims

Watson sued Hollingsworth, Schott, and Nalley in their individual and official capacities. The district court dismissed all *Bivens* claims against them in their official capacity, concluding that the United States had not waived sovereign immunity for those claims, a prerequisite to the district court's subject-matter jurisdiction. We review de novo a district court's dismissal for lack of subject-matter jurisdiction

---

[3] Watson does not contend that the district court erred by dismissing Evans for lack of prosecution. Nor does Watson contest that he failed to serve Evans with process.

under Fed. R. Civ. P. 12(b)(1). *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 946 (10th Cir. 2014). We conclude that the district court properly dismissed Watson's official-capacity *Bivens* claims.

"There is no such animal as a *Bivens* suit against a public official . . . in his or her official capacity. Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity . . . operates as a claim against the United States." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) (quoting *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)). And "[s]overeign immunity . . . shields the United States, its agencies, and its officers acting in their official capacity from suit." *Normandy Apartments, Ltd. v. U.S. Dep't of Hous.*, 554 F.3d 1290, 1295 (10th Cir. 2009).

This defense is jurisdictional and deprives courts of subject-matter jurisdiction. *Id.* The party seeking to assert a claim against the government must point to a specific waiver of sovereign immunity to establish jurisdiction. *Id.* Even when we liberally construe Watson's Amended Complaint, Watson has failed to identify any such waiver of immunity. And on appeal, Watson doesn't argue that the district court erred in dismissing the claims against Defendants-Appellees in their official capacity. Thus, sovereign immunity deprived the district court of jurisdiction to entertain any of Watson's claims against Defendants-Appellees in their official capacities. *See Peterson v. Timme*, 621 F. App'x 536, 541 (10th Cir. 2015) (unpublished) (affirming dismissal of the official-capacity claims for lack of subject-matter jurisdiction).

10

## III.  Individual-Capacity *Bivens* Claims

When public officials inflict constitutional injuries in the course of performing their duties, they may be individually liable for damages. *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). A *Bivens* action provides a "private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)).

The district court granted Defendants-Appellees summary judgment on Watson's individual-capacity *Bivens* claims based on their lack of personal participation and their qualified-immunity defense. We review de novo a district court's grant of summary judgment, applying the same standards as apply in the district court. *Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### A.  Lack of personal participation

At the heart of Watson's Complaint is his attempt to hold someone responsible for Evans's alleged assault. But it is undisputed that the Defendants-Appellees played no part in the alleged attack. To establish *Bivens* liability, Watson must provide evidence that an individual directly and personally participated in the purported constitutional violation. *Pahls*, 718 F.3d at 1226. "Government officials may not be

11

held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676.

But we have recognized that government officials may be held responsible for constitutional violations under a theory of supervisory liability. *Id.* To prevail on a suit against a supervisor, Watson must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010).

Here, Watson doesn't allege, much less present any evidence of, a policy created or implemented by the Defendants-Appellees that caused him harm. Further, Watson's allegations against the Defendants-Appellees relate to conduct that happened after Evans allegedly assaulted him. Thus, to the extent Watson attempts to hold the Defendants-Appellees responsible for Evans's alleged assault, the district court properly granted summary judgment in their favor.

## B.    Qualified Immunity

After dismissing Watson's claims based on Evans's conduct, we are left with three allegations: (1) that the Defendants-Appellees failed to respond to various correspondence or agency grievances related to the assault; (2) that the Defendants-Appellees placed him in the Special Housing Unit after the alleged assault; and (3) that Hollingsworth covered up medical reports and attempted to destroy video footage of the assault. The district court awarded the Defendants-Appellees qualified

12

immunity on each of these claims because Watson had failed to allege conduct on the part of the Defendants-Appellees that amounted to a constitutional violation.

"Public officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Pahls*, 718 F.3d at 1227. We review de novo a grant of summary judgment based on qualified immunity. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). "[Q]ualified immunity . . . is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Iqbal*, 556 U.S. at 672 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Once a defendant asserts qualified immunity, "the burden shifts to the plaintiff to establish (1) a violation of a constitutional right (2) that was clearly established" at the time of the violation. *Puller*, 781 F.3d at 1196 (citing *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc)).

To meet the "heavy two-part burden" necessary to overcome a qualified-immunity defense, plaintiffs must point to admissible evidence in the record. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Watson "may not rest upon the mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Instead, Watson must "present sufficient evidence in specific, factual form for a jury to return a verdict in [his] favor." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

In his Appellate Brief, Watson states that he "is not aware of the law that the District Court applied that was wrong." Appellant's Opening Br. at 4. Without providing any additional argument, Watson claimed that "there is proof and evidence that shows all defendants violated plaintiffs [sic] constitutional rights." *Id.* And Watson makes no attempt to show any specific constitutional rights that Defendants violated.

We have reviewed all of the documents submitted by Watson in response to Defendants' summary-judgment motion. Watson has presented no evidence to support his allegations that Defendants-Appellees failed to respond to various correspondence or agency grievances related to the assault or that Hollingsworth covered up medical reports and destroyed video footage of the assault. In response to the summary-judgment motions of Defendants-Appellees, Watson instead submitted incident reports, documents related to his administrative remedies, and correspondence between his mother and Hollingsworth. Nothing in these documents even remotely suggests that Hollingsworth covered up medical records. And contrary to Watson's assertions, his submitted evidence shows that Defendants-Appellees responded to his administrative-remedy requests. But even if his evidence supported his claims, that conduct would not have amounted to a constitutional violation. Thus, the district court didn't err in granting summary judgment against these claims.

We also agree with the district court that Watson has failed to show a constitutional violation based on Defendants-Appellees having placed him in the Special Housing Unit. *See Stallings v. Werholtz*, 492 F. App'x 841, 845 (10th Cir.

14

2002) (unpublished) (confinement in administrative detention did not impose a constitutional deprivation of liberty interest); *Johnson-Bey v. Ray*, 38 F. App'x 507, 509 (10th Cir. 2002) (unpublished) (concluding that plaintiff failed to allege constitutional violation from placement in the Special Housing Unit). For these reasons, we agree with the district court that Watson has failed to present sufficient evidence to survive Defendants'-Appellees' summary-judgment motion on qualified-immunity grounds.

## IV.    Request for Counsel

Watson also challenges the district court's repeated denials of his request for counsel. We review the denial of appointment of counsel in a civil case for an abuse of discretion. *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (quoting *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985)). Unlike for criminal defendants, "[t]here is no constitutional right to appointed counsel" for civil plaintiffs. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989). Instead, a court's discretion to appoint counsel stems from 28 U.S.C. § 1915(e)(1), which allows the district court to appoint counsel for indigent parties. *Id.* We have directed district courts to evaluate, in connection with a request to appoint counsel under § 1915, the "merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115.

Watson filed two motions to appoint counsel, both of which were denied by the district court, and two motions to reconsider the district court's denials. The first time the district court denied Watson's motion, it said that it had "examined the record and declines to appoint counsel at this point in the development of the matter. The court therefore will deny the request at this time but may revisit this request in the future." R. Vol. 1 at 116. After Watson's second motion, the district court considered the proper factors and noted that Watson "has shown his ability to present the operative facts and to frame his legal claims," that the legal issues were not "unusually complex or novel," and that Watson was familiar with the administrative procedures. *Id.* at 361–62. On appeal, Watson presents no argument explaining how the district court erred, instead simply repeating his conclusions that the district court should have appointed counsel.

We conclude that the district court did not abuse its discretion in denying Watson's motions to appoint counsel. In denying Watson's motions to appoint counsel, the district court addressed the merits of Watson's claims, the nature and complexity of the factual and legal issues, and his ability to investigate facts and present his claims. *Id.* We agree with the district court that none of the issues in this case are unusually complex and Watson was able to present his arguments. And, as discussed above, Watson's claims against the Defendants lack merit and we agree with the district court's summary-judgment grant. *See McCarthy*, 753 F.2d at 838 ("The burden is upon the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."). Finally, Watson presents no

16

argument that the denial of counsel resulted in fundamental unfairness. Thus, the district court didn't abuse its discretion. For the same reasons, we deny Watson's motion for appointment of counsel on appeal.

**V. IFP Motion**

We have reviewed Watson's IFP motion and conclude that "he has demonstrated 'a financial inability to pay the required fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal.'" *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812–13 (10th Cir. 1997) (quoting *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991)). So we grant his motion.

## CONCLUSION

For these reasons, the district court's judgment is affirmed. We grant Watson's IFP motion but deny his motion for appointment of counsel. We remind Watson that he remains obligated to continue making partial payments until the entire fee has been paid.

Entered for the Court

Gregory A. Phillips
Circuit Judge

17